Filed 2/26/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 29

Nicholas David Hageman, Plaintiff and Appellee

v.

Amber Dawn Hageman, 

n/k/a Amber Dawn Sagert, Defendant and Appellant

No. 20120183

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Kari R. Winning, P.O. Box 5758, Grand Forks, N.D. 58206-5758, for plaintiff and appellee.

Deanna F. Longtin, P.O. Box 572, Cavalier, N.D. 58220-0572, for defendant and appellant.

Hageman v. Hageman

No. 20120183

VandeWalle, Chief Justice.

[¶1] Amber Hageman, now known as Amber Sagert, appealed from an amended divorce judgment modifying a prior judgment and granting Nick Hageman primary residential responsibility for their minor child.  Because we conclude the district court did not clearly err in modifying the judgment and awarding Hageman primary residential responsibility of the child, we affirm.

I

[¶2] In May 2006, Hageman and Sagert were married, and they had one child in 2008, K.N.H.  In August 2009, they were divorced under a stipulated judgment entered in Polk County, Minnesota.  Under the stipulated judgment, the parties agreed they would share joint custody of K.N.H. under a rotating schedule in which K.N.H. would alternate equally between Sagert and Hageman on a two-day, two-day, three-

day pattern.  Hageman and Sagert specifically agreed it was in K.N.H.’s best interests to reside in the “Grand Forks, North Dakota/East Grand Forks, Minnesota area.”  The stipulated judgment specifically allowed either party to bring a motion to modify residential responsibility of the child if either moved from the area:

5. 
RESIDENCE OF MINOR CHILD.
  The award of joint physical custody herein is contingent upon both parties’ continued residence in the Grand Forks, ND/East Grand Forks, MN area.  The parties agree it would 
best serve the minor child’s best interests for the child to continue to live in the Grand Forks/East Grand Forks area
 until he reaches the age of eighteen (18) years.  For that reason, the parties agree that if either party attempts to relocate outside of the Grand Forks/East Grand Forks area with the minor child, 
that proposed relocation will constitute a material change in circumstances allowing either party to file a motion for modification of custody
.

 

(Emphasis added.)  

[¶3] Both parties resided in the stipulated area until September 2010, when Sagert moved “approximately 75 miles” from Grand Forks to St. Thomas, North Dakota.  Sagert moved to the home of Jordan Sagert, whom she subsequently married in June 2011.  At the time of the hearing in this case, the Sagerts were also expecting their first child  to be born in January 2012.  Jordan Sagert owns a crop consulting business and hobby farm in the St. Thomas area.  Amber Sagert works for the consulting business.  Sagert has lived with her husband in St. Thomas since September 2010.  Hageman continues to reside in Grand Forks, North Dakota.  He remarried in February 2011.  There is testimony the parties continued with the joint custody schedule with K.N.H.

[¶4] In February 2011, Sagert registered the Minnesota divorce judgment in North Dakota and moved to modify primary residential responsibility of the child based on her relocation.  Hageman responded and also moved for primary residential responsibility of the child.  After an evidentiary hearing on the parties’ motions, the district court awarded Hageman primary residential responsibility of the child.

II

[¶5] A parent may move to modify primary residential responsibility under the framework provided in N.D.C.C. § 14-09-06.6.  
Haroldson v. Haroldson
, 2012 ND 44, ¶ 6, 813 N.W.2d 539.  Section 14-09-06.6, N.D.C.C., provides specified limitations on post-judgment modifications of primary residential responsibility, stating in relevant part:

1. Unless agreed to in writing by the parties, or if included in the parenting plan, no motion for an order to modify primary residential responsibility may be made earlier than two years after the date of entry of an order establishing primary residential responsibility, except in accordance with subsection 3.

. . . .

7. The court may modify a prior order concerning primary residential responsibility at any time if the court finds a stipulated agreement by the parties to modify the order is in the best interest of the child.

8. Upon a motion to modify primary residential responsibility under this section, the burden of proof is on the moving party.

 

[¶6] In this case, the parties agreed that a material change occurred based on Sagert’s relocation to the St. Thomas area, triggering the divorce judgment’s provision allowing either party to file a motion to modify custody.  The district court found the physical distance between the parties’ current residences made the earlier stipulated arrangement “totally impractical, if not impossible.”  Based on the divorce judgment’s provision allowing a judicial review and, if necessary, a redetermination of parent responsibilities and parenting time, the court moved directly to consideration of the best interest factors under 
N.D.C.C. §
 14-09-06.2.

[¶7] To modify primary residential responsibility the district court must find a modification is necessary to serve the child’s best interests.  
See
 
State v. Neustel
, 2010 ND 216, ¶ 12, 790 N.W.2d 476.  The court must decide which parent will “better promote the [child’s] best interests and welfare.”  
Marsden v. Koop
, 2010 ND 196, ¶ 9, 789 N.W.2d 531.  In awarding primary residential responsibility, 
the court considers the best interest factors under N.D.C.C. § 14-09-06.2(1):

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child’s developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent’s home environment, the impact of extended family, the length of time the child has lived in each parent’s home, and the desirability of maintaining continuity in the child’s home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. . . .

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child’s best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

 

N.D.C.C. § 14-09-06.2(1)(a)-(m).  

[¶8] The district court’s decision to modify primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review.  
Vining v. Renton
, 2012 ND 86, ¶ 15, 816 N.W.2d 63.  A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made.  
Id.
  “In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court’s decision merely because this Court may have reached a different result.”  
Hammeren v. Hammeren
, 2012 ND 225, ¶ 8, 823 N.W.2d 482.  “A choice between two permissible views of the weight of the evidence is not clearly erroneous.”  
Id.
  “[O]ur deferential review is especially applicable for a difficult primary residential responsibility decision involving two fit parents.”  
Id.
 (quotations omitted).

[¶9] 
Here, in awarding Hageman primary residential responsibility, the district court considered each of the statutory factors in 
N.D.C.C. §
 14-09-06.2 and found factors (a), (b), (c), (d), (e), (h), and (k) favored neither party.  The court further found factors (f), (g), (i), (j), and (l) were not relevant.  The court, however, found factor (m) favored Hageman, stating the parties had previously agreed in the stipulated judgment that the interests of the child would be met by continuing to reside in the immediate Grand Forks area.

III

[¶10] Sagert argues the district court erred in deciding she had not provided sufficient evidence to grant her primary residential responsibility because the court failed to adequately consider the evidence presented.  She asserts the evidence in the record shows she has been K.N.H.’s primary caregiver since birth, she would provide a stable and loving home environment conducive to K.N.H.’s development, K.N.H. would not need daycare on a regular basis, and K.N.H. would grow and develop a strong, loving relationship with a new sibling.  Sagert argues the court clearly erred in its findings under factors (a), (b), (c), (d), (k), and (m), which she contends should favor her. 

A

[¶11] Under factor (a), the love, affection, and other emotional ties between the parents and child, Sagert argues the district court clearly erred in finding this factor favored neither party because the court failed to make sufficient findings based on the evidence in the record.  

[¶12] Sagert contends, even though the parties had joint primary residential responsibility, most of her parenting time was spent exclusively with K.N.H. when the child was with her because she had been able to arrange her work schedule around her parenting time.  She asserts she has not needed daycare and would not need daycare in the future, while Hageman testified that he takes K.N.H. to daycare when he is working and would be required to do so if awarded primary residential responsibility.  Further, Sagert argues that she has made K.N.H.’s regular doctor appointments, that the court should have found that she is K.N.H.’s primary caregiver, and that this factor should favor her.

[¶13] In finding factor (a) favored neither party, the district court found: “Both clearly love their son very much and both clearly have the intention and ability to provide their son with nurturing, love, affection and guidance he deserves and needs.” Although Sagert argues she has been the primary caregiver, there is testimony that the parties in fact shared joint physical custody and Sagert acknowledged that both she and Hageman each had the child 50 percent of the time.  There is testimony that K.N.H. has a strong father-son bond and that K.N.H. looks up to Hageman as a role model.  There is also testimony that when the child is sick or injured, K.N.H. looks to his father for comfort. 

[¶14] We conclude the district court’s finding that factor (a) favored neither party is not clearly erroneous.

B

[¶15] Under factor (b), the ability of each parent to assure the child receives adequate food, clothing, shelter, medical care, and a safe environment, Sagert contends the district court’s finding this factor favored neither party is clearly erroneous because she provided for “more” of K.N.H.’s needs.  She argues this factor should have favored her.  Sagert argues although each party can and has provided for K.N.H., the testimony indicated that Hageman had not been the party to assure K.N.H. received medical care and that Sagert had made the child’s doctor appointments.  

[¶16] The district court found this factor favored neither party because both parties are “clearly committed to K.N.H.’s emotional and physical needs, and both have the resources to ensure that these needs are met.”  Hageman testified that he is capable of making routine medical appointments and he had taken K.N.H. to emergency care while on vacation.  There is testimony Hageman attended medical appointments and would be capable of making appointments for K.N.H.  Further, there is no evidence Hageman is incapable of providing adequate medical care to their child.  

[¶17] Because there is evidence supporting the court’s finding, we conclude the district court’s finding on factor (b) is not clearly erroneous.

C

[¶18] Under factor (c), the child’s developmental needs and ability of each parent to meet those needs, Sagert argues the district court clearly erred in finding this factor favored neither party. 

[¶19] Sagert asserts this factor should favor her because K.N.H. would essentially receive a better education in the Cavalier school district.  Based on her testimony, Sagert contends that K.N.H. would attend school in Cavalier, that the class sizes are smaller than in Grand Forks, and that K.N.H. would have the opportunity to attend activities with families and parents known by Sagert.  

[¶20] In finding factor (c) favored neither party, the district court found K.N.H. was a normal and happy three-year-old with no adverse developmental problems.  The court also found the parties could put aside their differences for their child and would be able to meet the child’s age-appropriate developmental and educational needs in the future.

[¶21] At the hearing, Hageman testified about the educational and extra-curricular activities available to K.N.H. in Grand Forks, in addition to his work with K.N.H. using preschool workbooks.  There is testimony in the record supporting the finding that both parties are able to meet K.N.H.’s developmental and educational needs, and we conclude the district court’s finding on factor (c) is not clearly erroneous. 

D

[¶22] Under factor (d), the sufficiency and stability of each parent’s home environment, Sagert argues the district court’s finding this factor favored neither party is clearly erroneous because the court failed to consider all the evidence and failed to “accurately analyze” the parties’ testimony.  Because Sagert contends she is able to provide a more stable home, she asserts this factor should significantly favor her.

[¶23] In finding factor (d) favored neither party, the district court found:

Both Nick and Amber have re-married, and it appears that they have continued to co-parent their son just about equally since divorce despite their geographical distance from one another.  Amber moved to the St. Thomas area in September 2010. Nick continues to reside in the residence he has occupied since K.N.H. was but a few months old. Nick’s wife presently commutes from Grand Forks to a job in Fargo three days a week and, although there is some travel associated with Nick’s job, he indicated that he can usually work from home when necessary. Amber’s husband is self-employed and he is also very flexible with his work schedule.  Since Amber works from her home, there appears to be a very minimal need for regular daycare at this time when K.N.H. is with Nick or with Amber, although certainly there will be such occasions.  From evidence presented, it appears that both parents can provide a stable environment for K.N.H.[]  It also appears that the step-parents and extended families on both sides all have an excellent relationship with, and certainly care for, K.N.H.[]  Conversely, it appears that K.N.H. is very comfortable with both of his step-parents as well as his extended family.  Both parents are living in stable home environments.  This factor favors neither party.

 

[¶24] Sagert contends the district court failed to consider the evidence presented and clearly erred in stating minimal daycare would be needed by both parties.  Sagert asserts the court failed to consider Hageman’s testimony that K.N.H. would be in full-

time daycare if he were granted primary residential responsibility and that K.N.H. would not be attending daycare if he were with her, except to attend preschool.  Sagert also asserts that both Hageman and his wife have travel associated with their work and that there would be a change in K.N.H.’s life in the future based on Hageman’s testimony that he and his wife are looking for a new house.

[¶25] Although we have said a party’s work schedule may be an appropriate consideration in deciding primary residential responsibility, 
see, e.g.
, 
Hammeren
, 2012 ND 225, ¶ 25, 823 N.W.2d 482, the district court considered the parties’ work schedules and need for daycare.  Additionally, there is evidence in the record regarding K.N.H.’s various connections to the Grand Forks area, the time spent with extended family members, and testimony relating to the child’s involvement in preschool and other activities.  

[¶26] We conclude the district court did not clearly err in finding factor (d) favored neither party.

E

[¶27] Under factor (k), the interaction and interrelationship with any person in a parent’s household, Sagert argues the district court clearly erred in finding this factor favored neither party because the court failed to find that developing a relationship with K.N.H.’s future half-sibling would be in K.N.H.’s best interests.  

[¶28] Sagert argues the court failed to recognize Sagert was expecting a child and K.N.H. would have a half-sibling residing in the Sagerts’ home.  Sagert contends this factor strongly favors her because K.N.H. would benefit by developing a strong, healthy relationship with a sibling.  While acknowledging this case is not about splitting custody of two young children, Sagert argues the court’s decision has the same effect and K.N.H.’s potential development of a relationship with his half-sibling is an essential fact that should be considered and given a significant weight.

[¶29] The district court found:

Amber’s parents reside in [the] Thief River Falls, Minnesota area, and she has a sister residing in Grand Forks. Although she has no immediate family in the St. Thomas area, there nevertheless appears to be frequent inter-familial contact.  Nick’s immediate family resides in close proximity to Grand Forks.  As indicated above, both step-parents and extended families care for K.N.H., and he appears to be equally comfortable with all as well.  This factor favors neither party.

 

The district court made detailed findings under factor (k), showing its consideration of the evidence.  We conclude the court did not clearly err in failing to make a specific finding about K.N.H.’s potential relationship with an unborn half-sibling, nor has any decision relying on this factor been drawn to our attention.  Based upon our review of the record, we conclude the district court did not clearly err in finding factor (k) favored neither party.

IV

[¶30] Under factor (m), any other factor considered to be relevant, Sagert argues the district court clearly erred in finding this factor favored Hageman because the court improperly required her to overcome a “presumption” K.N.H. should remain in the Grand Forks area.  Sagert argues the court failed to weigh the advantages and disadvantages of K.N.H. living in rural St. Thomas with his mother.  Sagert also argues the court erred in requiring Sagert to provide sufficient evidence to prove K.N.H.’s removal from the Grand Forks area was in his best interest.

[¶31] After making detailed findings that the preceding factors favored neither party, the district court found factor (m) favored Hageman:  

As indicated above, the trial court does take note of the fact that at time of divorce, both Amber and Nick agreed that the interests of their son would be best met if he were to continue to reside in the immediate Grand Forks area. (August 24, 2009 Polk County (Minnesota) District Court Judgment, para 5).  Nothing has been presented to convince this court that K.N.H.’s best interests now require a change from the area which both parties agreed as time of divorce [sic] would best meet those interests.  This factor favors Nick.

 

[¶32] Sagert argues the district court’s finding failed to consider the evidence presented at the hearing.  She asserts the court erred because, if she were awarded primary residential responsibility, K.N.H. would live on a farm rather than in an apartment building with no yard, K.N.H. would not have to attend daycare on a full-

time basis, K.N.H. would have already bonded with his unborn sibling, and Hageman and his wife travel for work-related purposes.  Sagert argues these facts should weigh heavily in her favor.

[¶33] In finding factor (m) favored Hageman, the district court considered all of the other factors and found both Sagert and Hageman had previously stipulated that K.N.H.’s interests would be best served if he continued to reside in the Grand Forks area.  The testimony at the hearing indicates the parties jointly agreed to include this provision in the divorce judgment, and before their divorce the parties had returned to the area shortly after K.N.H.’s birth, specifically so K.N.H. would be near family and friends.  Hageman also testified he grew up in the Grand Forks area.  Although Sagert testified Hageman had approached her about moving to Fargo about a week after they had divorced, both Hageman and his new wife testified at the hearing that they intended to continue to reside in Grand Forks and had no intent to move to Fargo.

[¶34] Nevertheless, Sagert argues the district court’s statement under factor (m), finding she had not provided “sufficient evidence to give the court reason to believe that a move out of the Grand Forks area was in K.N.H.’s best interest,” was an erroneous view of the law and, in effect, placed a “heavier burden” on her for an in-

state relocation out of the Grand Forks area.  Sagert contends the court’s analysis under factor (m) is erroneous because it mistakenly applies the provisions for moving out of state in N.D.C.C. § 14-09-07, to this case, which involves relocation within the state of North Dakota.  We believe Sagert misconstrues the district court’s findings under factor (m), and we conclude the court did not place a heavier burden on Sagert but merely gave credence to the parties’ stipulated divorce judgment.

[¶35] The district court did not cite or rely upon the provisions for moving out of state in N.D.C.C. § 14-09-07.  Instead, directly following its finding on factor (m), the district court explained that it was “readily apparent that young K.N.H. has two parents who love and care for him very deeply” and thus “determining in which parent’s home he should reside has been extremely difficult.”  The court found Sagert and Hageman had previously stipulated that K.N.H.’s interests were served by continuing to reside in the Grand Forks area and that no evidence had been presented at the hearing demonstrating K.N.H.’s best interests required a change from the stipulated area.  

[¶36] We have long encouraged the peaceful settlement of disputes in divorce cases.  
See, e.g.
, 
Toni v. Toni
, 2001 ND 193, ¶ 10, 636 N.W.2d 396.  “It is the promotion of the strong public policy favoring prompt and peaceful resolution of divorce disputes that generates a judicial bias in favor of the adoption of a stipulated agreement of the parties.”  
Id.
  However, we have also recognized that any stipulated judgment precluding modification of primary responsibility violates public policy.  
See
 
Haroldson
, 2012 ND 44, ¶ 6, 813 
N.W.2d
 539 (citing 
Zeller v. Zeller
, 2002 ND 35, ¶¶ 17-18, 640 
N.W.2d
 53).  Further, as this Court has said, “[I]f the previous custody placement was based upon the parties’ stipulation and not by consideration of the evidence and court[-]made findings, the trial court must consider all relevant evidence, including pre-divorce conduct and activities, in making a considered and appropriate custody decision in the best interests of the children.”  
Woods v. Ryan
, 2005 ND 92, ¶ 11, 696 
N.W.2d
 508 (quoting 
Kelly v. Kelly
, 2002 ND 37, ¶ 22, 640 
N.W.2d
 38) (quotations omitted); 
see also
 
Wetch v. Wetch
, 539 
N.W.2d
 309, 312-13 (N.D. 1995).

[¶37] Here, because the parties originally had joint custody, the district court found it was necessary to award one of the parties primary residential responsibility.  Rather than placing a heavier burden on Sagert, however, the court acknowledged the parties’ prior stipulation.  The court was reluctant to move the child’s residence outside of Grand Forks and found no evidence showed K.N.H.’s best interests required changing the prior stipulation.  Further, in considering the parties’ prior stipulated judgment, the court did not construe it to preclude modification of primary residential responsibility outside of Grand Forks, but rather considered relevant evidence leading to the parties’ agreement that, at the time of the judgment, raising K.N.H. in the Grand Forks area was in his best interests.  

[¶38] Considering the circumstances leading to the stipulated divorce judgment and the totality of the court’s findings, including that immediate family resides in the Grand Forks area, we are able to understand the court’s rationale and decision to award custody as it did to Hageman.  On this record, we conclude the court did not clearly err in finding factor (m) favored Hageman based, in part, upon the parties’ prior stipulation.  We therefore conclude the court did not err in finding factor (m) favored Hageman and in awarding him primary residential responsibility of the child.

V

[¶39] We affirm the amended judgment.

[¶40] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Carol Ronning Kapsner

Maring, Justice, dissenting.

[¶41] I, respectfully, dissent.  I am of the opinion the trial court’s finding that factor (m), N.D.C.C. § 14-09-06.2(1), favored Nicholas Hageman was induced by an erroneous view of the law.

I

[¶42] A trial court may grant a change in primary residential responsibility if the party seeking the change in residential responsibility proves there has been a material change in circumstances and modification is necessary to serve the best interests of the child.  
Siewert v. Siewert
, 2008 ND 221, ¶ 16, 758 N.W.2d 691.  However, if the parties currently have joint primary residential responsibility, an original determination of primary residential responsibility is necessary.  
See
 
Maynard v. McNett
, 2006 ND 36, ¶ 21, 710 N.W.2d 369 (holding on a motion for change in custody, an original determination of primary residential responsibility is appropriate if the parties have joint primary residential responsibility and one party wishes to relocate).  The same is true when the prior residential responsibility determination is based on the parties’ stipulated agreement.  
See
 
Wetch v. Wetch
, 539 N.W.2d 309, 312-13 (N.D. 1995) (holding “if the previous custody placement was based upon the parties’ stipulation and not by consideration of the evidence and [the] court made findings, the trial court must consider all relevant evidence, . . . in making a considered and appropriate custody decision in the best interests of the children”).  

[¶43] Hageman and Sagert’s divorce was based on a marital termination agreement.  Under this agreement, the parties agreed to have joint primary residential responsibility of their child.  On the motions to modify, the trial court was required, therefore, to award primary residential responsibility to the parent who would better promote the child’s best interests notwithstanding the prior residential responsibility agreement and judgment.

[¶44] In awarding primary residential responsibility to Hageman, the trial court found factors (a), (b), (c), (d), (e), (h), and (k) favored neither party; and factors (f), (g), (i), (j), and (l) were irrelevant.  The trial court found factor (m), N.D.C.C. § 14-

09-06.2(1), favored Hageman based on the parties’ stipulated agreement:

[A]t the time of divorce, both [Sagert] and [Hageman] agreed that the interests of their son would be best met if he were to continue to reside in the immediate Grand Forks area. . . . 
Nothing has been presented to convince this court that K.N.H.’s best interests now require a change from the area which both parties agreed as [sic] [the] time of divorce would best meet those interests.
  This factor favors [Hageman].  

(Emphasis added.)  The trial court erred by relying on the parties’ prior agreement to determine the child’s best interests and by imposing a greater burden on Sagert to prove it was not in the child’s best interests to live in the area.  The trial court’s reliance on the stipulated agreement is an erroneous view of the law and an abandonment of its judicial function.  It relied on the parties’ agreement as to what the parties believed at the time of the agreement would be in the child’s best interests until he turned eighteen years old.  The trial court accepted this prior agreement and required Sagert to produce evidence to convince the court otherwise.  This is contrary to public policy and inconsistent with our jurisprudence.

II

[¶45] The trial court erroneously relied solely on the parties’ prior agreement to award Hageman with primary residential responsibility of K.N.H.  A trial court is not bound by the parties’ stipulated agreement in a child custody matter.  
Zeller v. Zeller
, 2002 ND 35, ¶ 19, 640 N.W.2d 53.  Further, in a child custody matter, the trial court’s “paramount concern must be the best interests of the children involved.”  
Mathisen v. Mathisen
, 276 N.W.2d 123, 129 (N.D. 1979).  The trial court retains control over the rights of children and must grant primary residential responsibility in accordance with the child’s best interests.  
Zeller
, at ¶ 18; 
see
 N.D.C.C. § 14-09-

06.2(1) (providing “the best interests and welfare of the child is determined by the court’s consideration and evaluation of all factors affecting the best interests and welfare of the child”).

[¶46] In 
Zeller
, Doni and Jenny Zeller agreed that if Jenny Zeller’s employer, the United States Air Force, transferred her outside the state of North Dakota, the transfer would constitute a material change in circumstances and transfer primary residential responsibility to Doni Zeller.  2002 ND 35, ¶ 2, 640 N.W.2d 53.  This Court held that the trial court erred in finding the parties’ pre-divorce agreement to be “the law of the case” and binding on the trial court’s award of primary residential responsibility.  
Id.
 at ¶ 19.  Relying on 
Zarrett v. Zarrett
, 1998 ND 49, ¶ 10, 574 N.W.2d 855, which held agreements by parents prohibiting a trial court’s award of future child support payments is against public policy and invalid, this Court said custody matters should retain no less protection:

If divorcing parents may not validly limit the trial court’s power to modify child support by agreement, it follows a foritori that divorcing parents may not validly limit the trial court’s power to modify custody provisions by agreement.  There is no reason to apply a less stringent rule in custody matters than in support matters.

Zeller
, at ¶ 17.

[¶47] Other jurisdictions have also held that a parties’ stipulated agreement may not be dispositive in awarding primary residential responsibility.  
See
 
Nelson v. Nelson
, 263 P.3d 49, 53-54 (Alaska 2011) (holding a custody agreement cannot be enforced unless a court independently determines, at the time of enforcement, it serves the best interests of the children); 
Phillips v. Jordan
, 614 N.W.2d 183, 186 (Mich. Ct. App. 2000) (holding “[t]he trial court cannot blindly accept the stipulation of the parents [as to custody matters], but must independently determine what is in the best interests of the child”); 
Bell v. Bell
, 572 So. 2d 841, 845-46 (Miss. 1990) (holding an agreement mandating a child should be raised in a given area is invalid and does not adequately or sufficiently provide for the care and maintenance of children); 
McManus v. Howard
, 569 So. 2d 1213, 1215-16 (Miss. 1990) (holding “[t]he welfare of the children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal”); 
deBeaumont v. Goodrich
, 644 A.2d 843, 846 (Vt. 1994) (holding an automatic change in custody provision should not be given effect, “because it is premised on a mere speculation of what the best interests of the children may be at a future date”).

[¶48] The majority opinion, at ¶ 34, states that the trial court did not impose a greater burden on Sagert to overcome the parties’ prior agreement, but rather the trial court gave credence to the parties’ prior desires.  I disagree.  I believe the trial court gave more than credence to the agreement by completely accepting the parties’ prior agreement without independently finding whether it presently served the child’s best interests. 

[¶49] The trial court’s finding that “nothing has been presented to convince this court that K.N.H.’s best interests now require a change from the area” incorrectly presumes it was, and currently is, in the child’s best interests to remain in the Grand Forks/East Grand Forks area.  The initial judgment was based on an agreement of the parties.  By relying on this agreement, the trial court is now assuming, without having ever explicitly found, it is in the child’s best interests to remain in the Grand Forks/East Grand Forks area. 

[¶50] The trial court’s reliance on the prior agreement also implies the parent who remains in the Grand Forks/East Grand Forks area will be awarded primary residential responsibility.  And, only if the parent who moves away from the area can prove otherwise, it is in the child’s best interests to remain in the area.  Any agreement that purports to automatically transfer primary residential responsibility on the happening of a condition is against public policy.  
See
 
Zeller
, 2002 ND 35, ¶ 17, 640 N.W.2d 53 (holding a trial court may not accept a pre-divorce agreement automatically transferring primary residential responsibility to a parent upon a given condition).  The role of the judiciary is to determine, based on the factors set forth under N.D.C.C. § 14-09-06.2(1), whether the primary residential responsibility award best serves the child’s welfare and best interests.  
Seay v. Seay
, 2012 ND 179, ¶ 5, 820 N.W.2d 705.  In this case, the trial court erroneously applied the law by abandoning its judicial function.

III

[¶51] The parties’ pre-divorce agreement should be interpreted as a stipulation to modify the parties’ joint primary residential responsibility should either party move, not as an automatic grant of sole primary residential responsibility to one party.    The agreement said,

The award of joint physical custody herein is contingent upon both parties’ continued residence in the Grand Forks, ND/East Grand Forks, MN area.  The parties agree it would best serve the minor child’s best interests for the child to continue to live in the Grand Forks/East Grand Forks area until he reaches the age of eighteen (18) years.  For that reason, the parties agree that 
if either party attempts to relocate outside of the Grand Forks/East Grand Forks area with the minor child, that proposed relocation will constitute a material change in circumstances allowing either party to file a motion for modification of custody.

(Emphasis added.)

[¶52] Parties may stipulate as to a condition which constitutes a significant change in circumstances necessitating a change in primary residential responsibility.  
Dalin v. Dalin
, 512 N.W.2d 685, 687 (N.D. 1994).  Such a stipulation relieves a trial court of the two-step analysis required in modification proceedings and allows the trial court to treat the case as an original primary residential responsibility determination.  
Id.
 at 687-88.  

[¶53] The parties’ prior agreement is more appropriately construed as a stipulated provision for what constitutes a significant change in circumstances rather than as an automatic transfer of primary residential responsibility to the party remaining in the area.  This interpretation is not only the most logical based on the language in the parties’ agreement, but also comports with our jurisprudence.

IV

[¶54] The trial court applied an erroneous view of the law in its analysis under N.D.C.C. § 14-09-06.2(1)(m).  Although it may consider the parties’ agreement, the trial court must make an independent finding that it is in K.N.H.’s best interests to award Hageman with primary residential responsibility.  Therefore, I respectfully dissent and would remand for a correct application of the law.

[¶55] Mary Muehlen Maring