2013 ND 173

STATE of North Dakota, COUNTY OF CASS, ex rel., Maria Janelle SEIBOLD, and K.C.S., n/k/a K.S.L. a minor child, Plaintiffs

**Maria Janelle Seibold, Appellant**

v.

**Paul Ronald LEVERINGTON, Defendant and Appellee.**

No. 20130026.

Supreme Court of North Dakota.

Sept. 25, 2013.

Julie A. Oster, Fargo, N.D., for appellant.

Donavin L. Grenz, Linton, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Maria Seibold appealed from a second amended judgment entered after the district court denied her motion to change primary residential responsibility of their minor child from Paul Leverington to her. We conclude that the district court did not clearly err in denying Seibold's motion to modify primary residential responsibility and did not clearly err in its award of parenting time. We affirm.

I

[¶ 2] Seibold and Leverington were never married and have one child together, K.S.L., born in 2004. In 2006, a judgment

was entered finding Leverington is K.S.L.'s natural father, awarding Seibold sole decisionmaking responsibility and primary residential responsibility for the child, and awarding Leverington parenting time. In 2009, Leverington moved to modify primary residential responsibility. After a hearing, the district court found there had been a material change in circumstances and that it was in the child's best interests to modify primary residential responsibility. The court awarded Leverington sole decisionmaking responsibility and primary residential responsibility for the child and awarded Seibold parenting time, concluding the statutory best interest factors favored Leverington. In reaching its conclusions, the court found that K.S.L. had primarily resided with Seibold's parents, that Seibold had used child support payments for her own benefit, and that Seibold's contact and visitation with K.S.L. had been "sporadic," seeing the child as little as four times in 2008. The court also found that Seibold had restricted and limited Leverington's parenting time with K.S.L. and "secreted the fact" the child was being substantially raised and supported by her parents. The court found the best interest factors concerning the ability to provide for the child's needs and stability of the child's environment favored Leverington. An amended judgment was entered in September 2009, which was not appealed.

[¶ 3] In March 2011, Seibold moved for a second amended judgment and to hold Leverington in contempt. Seibold also requested the court award her additional parenting time, award the parties' joint decisionmaking responsibility for the child, and order the parties to use a parenting time coordinator to settle disputes. Seibold requested the court find Leverington in contempt for not allowing her access to information about the child and reasonable access to the child by telephone. She also requested the court award her compensatory parenting time and attorney's fees for bringing the contempt motion. Seibold filed an affidavit in support of her motions and requested the court to set a date for an evidentiary hearing on her motions.

[¶ 4] The district court subsequently denied Seibold's motions without holding an evidentiary hearing, denying both her motion for a second amended judgment and to hold Leverington in contempt. Seibold appealed, and in *State ex rel. Seibold v. Leverington*, 2012 ND 25, ¶ 21, 812 N.W.2d 460, a majority of this Court reversed the district court's summary denial of Seibold's motions and remanded. This Court held that Seibold was entitled to a hearing on her motions to hold Leverington in contempt and to modify parenting time and that the district court had erred in denying Seibold's motions without waiting for expiration of the time for her to schedule and notice a hearing. *Id.* We remanded this case for further proceedings in the district court. *Id.*

[¶ 5] On remand, Leverington moved the district court in June 2012 for supervised parenting time for Seibold, which the court denied on an ex parte interim basis but considered during the subsequent hearings. Leverington also moved the court to modify the amended judgment to prohibit Seibold and her parents from visiting K.S.L. at school, except during extracurricular activities open to the general public. Leverington also moved to modify the amended judgment to require all exchanges of K.S.L. be supervised and for Seibold to pay her share of costs for supervised parenting time and exchanges. Leverington also moved the court to hold Seibold in contempt for failing to reimburse him for medical expenses, to order Seibold to submit to a parental capacity evaluation, to not allow Seibold's mother to have unsupervised visitation with K.S.L.

unless she completed a parental capacity evaluation, and to award him attorney's fees and costs.

[¶ 6] In July 2012, Seibold moved the district court to award primary residential responsibility to her and to impose sanctions against Leverington for bringing the ex parte motion and for failing to cooperate in discovery. In July and August 2012, the district court held evidentiary hearings on the parties' pending motions. The court heard testimony from a number of witnesses, including Seibold, Leverington, licensed psychologists, K.S.L.'s daycare providers, a school counselor, in addition to friends and family. The parties also stipulated that affidavits and exhibits filed with the court before the hearing would be part of the record. Additionally, at the close of evidence, Leverington withdrew his motion for supervised parenting time for Seibold with K.S.L., and the court deemed his motion for supervised parenting time for Seibold's mother withdrawn because no evidence had been introduced regarding the motion.

[¶ 7] In November 2012, the district court issued its memorandum opinion and order, deciding the various pending motions and directing entry of a second amended judgment. The court ultimately denied Seibold's motion for primary residential responsibility, but granted the parties joint decisionmaking responsibility, appointed a parenting coordinator, and awarded Seibold additional parenting time. The court also found Leverington in contempt for denying Seibold reasonable access to K.S.L. via telephone, for withholding certain information regarding K.S.L., and for refusing to pay costs imposed in the prior appeal. The court also found Seibold in contempt for failing to reimburse K.S.L.'s medical expenses in a timely manner. Both parties' requests for attorney's fees as a sanction were denied.

## II

### A

[¶ 8] Seibold argues the district court's findings of fact are inconsistent with its conclusions of law and the court erred in not granting her motion to change primary residential responsibility of K.S.L. from Leverington to her.

[¶ 9] "A parent may move to modify primary residential responsibility under the framework provided in N.D.C.C. § 14–09–06.6." *Hageman v. Hageman*, 2013 ND 29, ¶ 5, 827 N.W.2d 23. Section 14–09–06.6(6), N.D.C.C., provides a two-step process for post-judgment modifications of residential responsibility when a motion is filed more than two years after a prior order establishing residential responsibility:

> The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:
>
> a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b. The modification is necessary to serve the best interest of the child.

[¶ 10] The moving party bears the burden of proving a material change in circumstances has occurred. *Frison v. Ohlhauser*, 2012 ND 35, ¶ 5, 812 N.W.2d 445. " 'A material change in circumstances is an important new fact that was not known at the time of the prior custody decree; however, not every change will be sufficient to warrant a change of custody.' " *Id.* at ¶ 6 (quoting *Siewert v. Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691). "A

material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *Siewert*, at ¶ 17 (quotations omitted).

[¶ 11] If the district court finds there is a material change in circumstances, the court "must [also] find a modification is necessary to serve the child's best interests." *Hageman*, 2013 ND 29, ¶ 7, 827 N.W.2d 23. "The court must decide which parent will 'better promote the [child's] best interests and welfare.' " *Id.* (quoting *Marsden v. Koop*, 2010 ND 196, ¶ 9, 789 N.W.2d 531). The court must consider the best interest factors under N.D.C.C. § 14–09–06.2(1)(a)–(m):

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

The court must analyze the best interest factors in light of two additional considerations. In *Vining v. Renton*, 2012 ND 86, ¶ 17, 816 N.W.2d 63 (quotations omitted), we said:

First, the best interests of the child factors must be gauged against the

backdrop of the stability of the child's relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding. Second, after balancing the child's best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is required. A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody. A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent.

*See also Rudnick v. Rode,* 2012 ND 167, ¶ 25, 820 N.W.2d 371.

[¶ 12] "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Wolt v. Wolt,* 2010 ND 26, ¶ 9, 778 N.W.2d 786. The district court's decision to modify primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review. *Hageman,* 2013 ND 29, ¶ 8, 827 N.W.2d 23. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 13] "In applying the clearly erroneous standard, [this Court] will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Hammeren v. Hammeren,* 2012 ND 225, ¶ 8, 823 N.W.2d 482. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* Our deferential review is "especially applicable for a difficult primary residential responsibility decision involving two fit parents." *Id.* (quotations omitted).

[¶ 14] Here, in its 32–page memorandum opinion and order, the district court thoroughly analyzed the evidence and found a material change in circumstances had occurred since entry of the prior order granting primary residential responsibility to Leverington. The court found that, while the underlying reasons and cause for K.S.L.'s emotional problems were not clearly shown, K.S.L. was indeed suffering with emotional changes and physical side effects, noting K.S.L.'s emotional difficulties dealing with the previous custody and parenting time transitions and the parties' contentious relationship. The court also found Leverington had unreasonably denied access to the child via telephone, frustrating Seibold's opportunity for building a relationship with K.S.L. Although the court found there was a material change in circumstances, the court found it was not in the child's best interests to modify residential responsibility. In its opinion, the district court addressed each of the specific factors in N.D.C.C. § 14–09–06.2(1) with detailed factual analysis, finding factors (a), (b), (c), (e), (f), (i), and (k) favored neither party, and factors (g), (j), and (*l*), were not applicable. The court found factors (d) and (h) favored Leverington and found factor (m) favored Seibold.

[¶ 15] On appeal, Seibold initially argues that the district court's findings are inconsistent with its conclusions of law. The basis for Seibold's argument is that, of the court's 16 paragraphs of findings of fact, 11 contained negative findings related to Leverington while only three contained negative findings regarding Seibold. Although Seibold's argument seems to suggest that the court's findings are a means of keeping score when reaching the ultimate legal conclusion, there are other fac-

tual findings throughout the court's opinion leading to its conclusions. The district court makes clear in its analysis that although both parties are fit parents, the parties have a contentious relationship, both have problems communicating, and both have engaged in negative conduct. In focusing on Leverington's conduct, we believe the district court was merely supporting its decision to grant Seibold expanded parenting time, to award the parties joint decisionmaking responsibility, and to appoint a parenting coordinator.

■■■ [¶ 16] Regarding the district court's application of the best interest factors, Seibold's main argument on appeal is that the court misapplied the factors by improperly applying the evidence presented at the hearing to its findings. Seibold argues that, based on the evidence, factors (b), (c), and, (e) should favor her instead of neither party; factor (d) should favor her instead of Leverington; and factor (h) should favor neither party. Seibold contends that the emotional and physical changes in K.S.L. are mainly due to Leverington's conduct and to the prior change in primary residential responsibility and that this compels a change in primary residential responsibility to her. However, the evidence and the court's findings regarding the cause of K.S.L.'s regression in behavior do not suggest such a clear connection. The court specifically found that Leverington had in most respects done a good job caring for K.S.L. and that Seibold had taken positive actions since the amended judgment, including taking parenting classes and submitting herself to a parental capacity evaluation which indicated she is a fit parent.

[¶ 17] Applying this Court's standard of review, we conclude the district court's decision denying Seibold's motion for modification of residential responsibility is not clearly erroneous. Seibold is essentially asking this Court to reweigh the evidence, or at least give greater weight to Leverington's negative actions since gaining custody of the child. While Leverington's apparent inflexible conduct and his frustration of Seibold's parenting time is concerning, the district court found both parents to be fit and balanced the stability provided by Leverington with Seibold's right to additional parenting time. The court also expanded Seibold's parenting time and added terms to attempt to diffuse the parties' contentious relationship, including the involvement of a parenting coordinator and counseling. The district court could have determined this to be a better option at this time than simply changing primary residential responsibility back to Seibold and increasing the instability in the child's life. *See, e.g., Frieze v. Frieze*, 2005 ND 53, ¶ 4, 692 N.W.2d 912 (methods other than a change of residential responsibility should be used initially to attempt to remedy a parent's misbehavior); *see also Vining*, 2012 ND 86, ¶ 17, 816 N.W.2d 63.

[¶ 18] As we noted, the district court here considered the witnesses and reviewed the evidence, and this Court will not reweigh the evidence presented by the parties, nor will we reweigh the credibility of the witnesses. *See In re N.C.M.*, 2013 ND 132, ¶ 22, 834 N.W.2d 270. "Our review of the [trial] court's findings of fact is guided by the clearly erroneous standard, and a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made." *Id.* (quotations omitted). Based on our review of the record, we conclude there is evidence supporting the district court's findings of fact, and the findings are not clearly erroneous.

## B

[¶ 19] Seibold argues the district court erred when it concluded it was in the child's best interests to continue the arrangement similar to what the parties had been exercising. She also contends that the district court erred by not entering a parenting plan in accordance with N.D.C.C. § 14–09–30.

> [T]o modify parenting time, "the moving party must demonstrate that a material change in circumstances has occurred since entry of the previous [parenting time] order and that the modification is in the best interests of the child." ... The standard set forth in our case law governs modification of a parenting time decision. We have defined a "material change in circumstances" for modifying parenting time as "important new facts that were unknown at the time of the initial custody decree" or initial parenting time order.

*Wolt v. Wolt*, 2011 ND 170, ¶ 19, 803 N.W.2d 534 (citations omitted). In modifying parenting time, "the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113. We have stated that parenting time between a parent without primary residential responsibility and a child is presumed to be in the child's best interests and that it is not merely a privilege of the parent, but "a right of the child." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. The district court's decision on parenting time is also a finding of fact, subject to the clearly erroneous standard of review. *Deyle v. Deyle*, 2012 ND 248, ¶ 17, 825 N.W.2d 245. Additionally, under N.D.C.C. § 14–09–30(1), the parents are required to submit a parenting plan to the court "to be included in the court's decree," but in circumstances when parents are unable to agree on a parenting plan, "the court shall issue a parenting plan considering the best interests of the child."

Section 14–09–30(2), N.D.C.C., provides the provisions that a parenting plan must include "at a minimum."

[¶ 20] Seibold argues that this case concerns emotional neglect, defiance of court orders, and high conflict and that the district court's order is "ambiguous and flexible." Seibold contends that because the court added more flexible parenting time, rather than more rigidity, to the parties' schedule, the parties' continuing conflicts will not be reduced. As an example, Seibold points out a myriad of potential interpretation problems in the court's award of parenting time to Seibold on the second and fourth full weekend each and every month, in stating neither party shall be entitled to more than two weekends in a row, and in its award of summer parenting time. Seibold also argues the district court erred in not entering a parenting plan required under N.D.C.C. § 14–09–30. While the district court's second amended judgment in addressing parenting time, contains provisions for weekends, summers, and holidays, Seibold contends the court did not comply with statutory requirements because it failed to address birthdays, vacation planning, and a procedure for review and adjustment of the parenting plan. *See* N.D.C.C. § 14–09–30(2)(d)(1), (2)(f).

[¶ 21] Here, however, the district court has ordered the involvement of a parenting coordinator, and it may be beneficial to maintain some flexibility in the parenting time schedule and to remove Leverington as the sole arbiter of the schedule. Although "a parenting coordinator has no authority to make substantive changes to a court's order, ... if a party disagrees with the devised parenting plan and brings that disagreement to the court's attention, it becomes the duty of the court to 'issue a parenting plan considering the best interests of the child.'" *Dieterle v. Dieterle*, 2013 ND 71, ¶ 19, 830

N.W.2d 571 (quoting N.D.C.C. § 14–09–30). We believe the court's second amended judgment, in addition to the order appointing a parenting coordinator, substantially complies with the parenting plan requirements of N.D.C.C. § 14–09–30. However, if the parenting coordinator is unable to resolve these parties' potential disputes under the plan, either party may move the court to enter and clarify a parenting plan.

[¶ 22] Therefore, based on our review of the record and the district court's factual findings, we conclude the court's parenting time decision was not induced by an erroneous view of the law, evidence exists to support the decision, and we are not left with a definite and firm conviction a mistake has been made. We further conclude the district court's award of parenting time to Seibold is not clearly erroneous and the second amended judgment entered by the court substantially complies with N.D.C.C. § 14–09–30. To the extent that Leverington has argued on appeal that the district court erred in awarding Seibold additional parenting time, granting joint decision-making responsibility, and ordering involvement of a parenting coordinator, we note that Leverington has not cross-appealed from the second amended judgment.

### III

[¶ 23] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or without merit. The second amended judgment is affirmed.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and DANIEL J. CROTHERS, J.J., concur. DALE V. SANDSTROM, J., concurs in the result.