# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 75___

| | |
|---|---|
| Jessica Purdy, | Plaintiff and Appellee |
| v. | |
| Daren Purdy, | Defendant and Appellant |
| and | |
| State of North Dakota | Statutory Real Party In Interest |

No. 20180133

Appeal from the District Court of Cass County, East Cemtra; Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Jason W. McLean, Fargo, ND, for plaintiff and appellee.

Daren Purdy, self-represented, Fargo, ND, defendant and appellant.

**Purdy v. Purdy**

**No. 20180133**

**Crothers, Justice.**

[¶1]     Daren Purdy appeals from an amended judgment after the district court denied his motion to modify primary residential responsibility for his two minor children and granted his motion to modify parenting time.  He argues the district court erred in awarding Jessica Purdy primary residential responsibility of the children.  We affirm the amended judgment, concluding the district court did not clearly err in denying his motion to modify primary residential responsibility.

I

[¶2]     Daren and Jessica Purdy were divorced in a May 2014 default judgment awarding Jessica Purdy primary residential responsibility of the parties' two minor children, granting Daren Purdy parenting time, and ordering him to pay Jessica Purdy $818 per month in child support.  Daren Purdy was awarded parenting time on alternating weekends from Friday at 4:00 p.m. to Sunday at 8:00 p.m., on Wednesday from 4:00 p.m. to 8:00 p.m., on specified holidays alternating every other year and for one week of uninterrupted parenting time during June, July and August.

[¶3]     In June 2017 Daren Purdy moved to modify primary residential responsibility and parenting time for the parties' children.  His motion sought an order granting him primary, or at least equal residential responsibility.  He alternatively sought increased parenting time.  The district court ruled Daren Purdy established a prima facie case for modification and ordered an evidentiary hearing.  *See* N.D.C.C. § 14-09-06.6(4).

[¶4]     After an evidentiary hearing, the district court denied Daren Purdy's motion to modify primary residential responsibility, modified the parties' parenting time and ordered him to pay Jessica Purdy $932 per month in child support.  In denying the motion to modify primary residential responsibility, the court analyzed the best interest factors and concluded most favored neither party, but factors (b), (d), (e) and

1

(h) favored Jessica Purdy. The court modified Daren Purdy's parenting time to include alternating weekends from Friday at 4:00 p.m. to Sunday at 4:00 p.m., one night a week from 4:00 p.m. to 8:00 a.m. the next morning or when school starts, alternating weeks during June, July and August, and specified holidays alternating every other year.

## II

[¶5]    Daren Purdy argues the district court erred in awarding Jessica Purdy primary residential responsibility of the children. He contends the court's decision is not in the best interests of the children and he should have been granted at least equal residential responsibility for the children. He argues the court did not address his claim that Jessica Purdy was in possession of a controlled substance near the children, the court erred in finding Jessica Purdy's statements about his parenting time were true and accurate, and the court erred in finding a "boiler plate" parenting schedule was in the children's best interests. He argues the best interest factors should be reevaluated with consideration given to his evidence that he is an involved parent and there is no plausible reason why equal residential responsibility would cause harm to the children.[1]

[¶6]    Jessica Purdy responds that the district court's findings on the best interests of the children are not clearly erroneous. She argues that she adequately explained the presence of a prescription pill near the children and that Daren Purdy essentially seeks to have this Court reweigh evidence and reevaluate the district court's findings on the best interests of the children.

[¶7]    A party moving to modify primary residential responsibility has the burden of proof. N.D.C.C. § 14-09-06.6(8). A motion for modification of primary residential

---

[1]During oral argument to this Court, Daren Purdy claimed for the first time that he did not receive proper legal representation in the proceeding to modify primary residential responsibility. We generally do not consider issues raised for the first time at oral argument. *E.g., Cavendish Farms, Inc. v. Mathiason Farms, Inc.*, 2010 ND 236, ¶ 5, 792 N.W.2d 500.

responsibility filed more than two years after an earlier order establishing residential responsibility is governed by N.D.C.C. § 14-09-06.6(6), which provides:

> "The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:
>
> a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b. The modification is necessary to serve the best interests of the child."

[¶8] Under N.D.C.C. § 14-09-06.6(6), a district court may modify primary residential responsibility if it finds: (1) a material change in circumstances has occurred; and (2) a modification is necessary to serve the child's best interests. *Seibold v. Leverington*, 2013 ND 173, ¶¶ 10-11, 837 N.W.2d 342. To find a modification is in the child's best interests, the court must evaluate the best interests factors under N.D.C.C. § 14-09-06.2(1)(a)-(m):

> "a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.
>
> b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.
>
> c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.
>
> d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.
>
> e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.
>
> f. The moral fitness of the parents, as that fitness impacts the child.
>
> g. The mental and physical health of the parents, as that health impacts the child.
>
> h. The home, school, and community records of the child and the potential effect of any change.

3

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k. The interaction and inter-relationship, or the potential for interaction and inter-relationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute."

[¶9] In *Seibold*, we explained that courts considering a motion to modify primary residential responsibility must analyze the best interest factors in light of two additional considerations:

"First, the best interests of the child factors must be gauged against the backdrop of the stability of the child's relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding. Second, after balancing the child's best interests and stability with the custodial parent, the trial court must conclude that a change in the status quo is required. A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody. A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent."

2013 ND 173, ¶ 11, 837 N.W.2d 342 (quoting *Vining v. Renton*, 2012 ND 86, ¶ 17, 816 N.W.2d 63).

[¶10] A district court's decision on a motion to modify primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Seibold*, 2013 ND 173, ¶ 12, 837 N.W.2d 342. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is

4

induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.* Under the clearly erroneous standard for appellate court review of a district court's findings, we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." N.D.R.Civ.P 52(a)(6). Under that standard, we view the evidence in the light most favorable to the findings, and we do not reweigh conflicting evidence, reassess witness credibility, retry the case or substitute our judgment for the district court's decision. *Seibold,* at ¶ 13. A choice between two permissible views of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Id.* We have recognized "[o]ur deferential review is 'especially applicable for a difficult primary residential responsibility decision involving two fit parents.'" *Id.* (quoting *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482). In *Molitor v. Molitor,* we explained a basis for our deferential review:

> "Our standard of review also allows us to reverse if our review of the entire record leaves us with a definite and firm conviction a mistake has been made. Our standard of review does not allow us to reverse the trial court merely because of the possibility we may have decided a case differently. As we have said, when dealing with findings of fact:
>> [R]eading a cold transcript is no substitute for hearing and observing witnesses as they testify. Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges. If we were to judge from the cold print, we might decide many cases differently than trial judges do, and this case might be one of them. But, if we decided differently, we would have no assurance that ours was the better decision."

2006 ND 163, ¶ 10, 718 N.W.2d 13 (quoting *City of Jamestown v. Neumiller*, 2000 ND 11, ¶ 12, 604 N.W.2d 441).

[¶11] Here, the district court's findings do not mention Daren Purdy's claim about Jessica Purdy's possession of a controlled substance near the children. However, the court explicitly found neither parent had any significant moral failings that would

5

impact the children. From this finding the court ostensibly believed Jessica Purdy's explanation that almost two years before Daren Purdy's motion she inadvertently left a bottle in her car with one prescription pill for her gastrointestinal pain. The court did not err as a matter of law by not explicitly mentioning the prescription pill in its findings on the best interest factors.

[¶12] The court considered each of the best interest factors under N.D.C.C. § 14-09-06.2(1)(a)-(m) and found that most favored neither party, but factors (b), (d), (e) and (h) favored Jessica Purdy:

> "**B.     The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.**
>
> "Both parents are gainfully employed and reside in suitable residences. Jessica is the one that has historically been the one to schedule and ensure that the children have gotten to medical appointments. Daren emphasized heavily an incident involving pain in the girl's 'bottom.' He complains that this is a result of the girl's alleged poor hygiene practices when they are with Jessica and that Jessica does nothing to fix this situation. Daren's mother testified that this condition has been ongoing since the date of the parties' separation. The only documentary evidence in the record on this point is a text message exchange on September 27, 2016. Exhibit 90. In this exchange, Jessica indicated that she was aware of the problem and had contacted medical professionals about it, but was told there was no urgency. Further, she indicated that she had scheduled an appointment with the children's pediatrician within two weeks, at which point the issue would be addressed. Daren did not contest this evidence. Frankly, Daren and his witnesses appear to have greatly exaggerated their testimony in this regard, rendering Jessica's version of events more credible than Daren's.
>
> "There was also testimony that Jessica allowed the children to be at home after school without supervision. Jessica testified credibly and without being impeached that this may have happened very infrequently, due to a late babysitter. Jessica further explained that she retained a babysitter to be at her home by 3:10 p.m. during the school year and that the children did not get home prior to that time. If the babysitter was late or did not show up, she had a back-up plan that they could go [to] a neighbor's house, at which resided a stay-at-home dad. Further, [one child] had a key to get into Jessica's home. It appears

6

that, if anything, Jessica has exercised reasonable prudence and care to make sure the children are supervised. This factor favors Jessica.

. . . .

**"D. The sufficiency and stability of each parent's home environment, the impact of extended family, length of time the child has lived in each parent's home and the desirability of maintaining continuity in the child's home and community.**

"Since the divorce, the children have resided primarily with Jessica (pursuant to the terms of the JUDGMENT BY DEFAULT). Jessica has resided at the present location for two years. The girls are more used to Jessica's residence. Daren indicated that if he were to prevail in this motion, that he would likely try to relocate to somewhere in West Fargo to be closer to the children's school. This is admirable on his part. However, a change in the parenting time arrangement would result in a change to the girls' living situation. This factor slightly favors Jessica.

**"E. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.**

"There is a plethora of evidence in this case that Jessica has attempted to facilitate Daren's ability to spend time with the children. She has agreed to vary from the terms of the JUDGMENT BY DEFAULT to facilitate Daren's work schedule. There are numerous text messages in evidence in which she has offered to switch dates or give Daren additional time. On the other hand, there is also evidence that Daren has, occasionally, kept the girls beyond the time he is allotted in the JUDGMENT BY DEFAULT. His responses, when questioned by Jessica, indicate a cavalier attitude toward her rights under the decree. Further, Daren's attitude has been that he is unwilling to discuss modifications to the Court's schedule unless he receives his demanded 50/50 custody arrangement. Overall, this factor favors Jessica.

. . . .

**"H. The home, school, and community record of the child and the potential effect of any change.**

"Both the children appear to be well-adjusted. School records of [one child] reflect that she is an above-average student that is exhibiting no behavioral issues. In short, there is not sufficient

7

evidence that the current situation is detrimental to the children. This factor favors Jessica."

[¶13] Under the clearly erroneous standard for our appellate review, the district court's findings were not induced by an erroneous view of the law and evidence exists in the record to support the court's findings. We are not left with a definite and firm conviction the court made a mistake in evaluating the best interest factors. It is not our function as an appellate court to reweigh or reevaluate the evidence, or to reassess witness credibility, and we decline Daren Purdy's request to do so in this case.

III

[¶14] The district court did not clearly err evaluating the best interest factors and in denying Daren Purdy's motion to modify primary residential responsibility. We affirm the amended judgment.

[¶15]  Daniel J. Crothers
        Lisa Fair McEvers
        Jon J. Jensen
        Jerod E. Tufte
        Gerald W. VandeWalle, C.J.