2005 ND 142

**Wesley Charles BLADOW, Plaintiff, Appellant and Cross–Appellee**

v.

**Kristine   Gail   BLADOW,   formerly known as Kristine Gail Berg, Defendant, Appellee and Cross–Appellant.**

No. 20040315.

Supreme Court of North Dakota.

July 25, 2005.

Samuel S. Johnson, Wahpeton, N.D., for plaintiff, appellant and cross-appellee.

Tracey R. Lindberg, Breckenridge, MN, for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Wesley Charles Bladow appealed, and Kristine Gail Bladow, formerly known as Kristine Gail Berg, cross-appealed from an amended divorce judgment modifying the parties' joint custody agreement, awarding Berg attorney fees, and determining the parties' child support obligations. We affirm the trial court's custody decision and award of attorney fees, reverse the court's determination of Bladow's child support obligation, and remand for further proceedings.

I

[¶ 2] Bladow and Berg were divorced in January 2003, under a stipulated agreement and judgment that awarded them joint physical care, custody, and control of their three minor children and provided they would each share equal custody of the children. Bladow continued to live on a farm near Hankinson, and Berg ultimately moved to Horace. At the time of the divorce, the oldest child was six years old and was enrolled in kindergarten at Hankinson, the second child was four years old, and the youngest child was almost two years old. Disputes arose between the parties regarding the implementation of their custody and visitation agreement and the choice of a school for the oldest child.

[¶ 3] In August 2003, Berg moved to amend the judgment to require a specific schedule for custodial exchanges and to require the oldest child to attend school in Horace. In support of her motion, Berg filed an affidavit that alleged "repeated problems and difficulty in agreeing to a proper exchange schedule." She claimed she had been denied visitation with her oldest child and had been subjected to repeated incidents of physical assault and violence during exchanges. Berg sought to have physical custody of all three children during the school week and to allow Bladow to have custody of the children on weekends during the school year.

[¶ 4] On August 25, 2003, Bladow obtained an ex parte order requiring the parties to follow their informal summer visitation schedule and requiring the oldest child to attend school in Hankinson until a September 4, 2003, evidentiary hearing. The court scheduled a hearing on the ex parte order for September 4, 2003. At the beginning of that hearing, the trial court announced the "matter before the Court [was] a hearing on [Berg's] motion and other items." After that evidentiary hearing, the court ruled from the bench on September 9, 2003, and decided the oldest child would reside primarily with Bladow and attend school in Hankinson, and the two youngest children would reside primarily with Berg during the week, but the court reserved the issue about the choice of school for the two youngest children. The court also established a visitation schedule for the children, which required the three children to be together with one of the parties on weekends and alternated those weekends between Bladow and Berg. After four more days of evidentiary hearings in November 2003 and January and February 2004, the court decided the two youngest children would attend school in West Fargo when they reached school age, awarded Berg $7,000 in attorney fees, and determined child support obligations for both Bladow and Berg.

II

A

[¶ 5] Bladow argues the trial court erred in holding an evidentiary hear-

ing on modification of custody under N.D.C.C. § 14–09–06.6(4), which provides:

A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing.

Bladow argues the trial court procedurally erred by holding an evidentiary hearing without (1) finding Berg had established a prima facie case warranting a custody modification, and (2) setting a date for an evidentiary hearing. Bladow claims he did not know the September 4, 2003, hearing was to decide custody of the children, and he was prejudiced because he was unable to obtain a custody investigator or have numerous witnesses testify on his behalf. Berg responds the issues of custody and the visitation exchange schedule were tried by the consent of both parties, and she and Bladow both asked the trial court to issue an order that granted them primary residential care of the children.

[¶ 6] Issues not raised in the pleadings, but tried by the express or implied consent of the parties are treated as if they have been raised in the pleadings. *Schumacher v. Schumacher*, 1999 ND 149, ¶ 25, 598 N.W.2d 131. Under N.D.R.Civ.P. 15(b), a pleading may be amended impliedly by the introduction of evidence that varies the theory of the case and is not objected to by the opposing party. *Schumacher*, at ¶ 25.

[¶ 7] Berg's motion requested primary residential care of the children during the school year. Bladow's ex parte application for relief also sought an exchange schedule and an award of primary care of the children. The trial court's ex parte order required the oldest child to attend school in Hankinson until the September 4, 2003, hearing. The parties' original agreement provided each parent with virtually equal time with the children, and the trial court recognized that, given the physical distance between the parents, there was no possible way to provide each party with equal time with the children when they began attending school. At the beginning of the September 4, 2003, hearing, the court announced the case as "a hearing on [Berg's] motion and other matters." Bladow did not object or request a continuance. The transcript of the September 4, 2003, hearing reflects that, without objection, both parties presented evidence involving custody and visitation at that hearing. When the trial court decided custody in its oral ruling from the bench on September 9, 2003, Bladow did not object to the scope of the court's order, and by motion filed on September 18, 2003, he sought temporary legal and actual physical custody of the three children. We conclude the issues about custody of the children and visitation were tried by consent of the parties at the September 4, 2003, hearing, and we reject Bladow's claim about lack of notice of the scope of that hearing.

[¶ 8] Bladow also claims Berg's motion failed to establish a prima facie case for a custody modification under N.D.C.C. § 14–09–06.6(3), because her affidavit contains (1) no specific allegations that he interfered with visitation, and (2) no specific allegations that the children's present environment somehow endangered their physical or emotional health.

[¶ 9] Whether a party has established a prima facie case entitling the party to an evidentiary hearing on a motion for change of custody is a question of law. *Hawley v. LaRocque*, 2004 ND 215, ¶ 4, 689 N.W.2d 386. We review questions of law de novo on the entire record. *Id.* The purpose of N.D.C.C. § 14–09–06.6 is to curtail repeated custody litigation. *Quarne v. Quarne*, 1999 ND 188, ¶ 9, 601 N.W.2d 256. Under N.D.C.C. § 14–09–06.6(3), no motion to modify a custody order may be made within two years after entry of an order establishing custody unless the moving party has established a prima facie case justifying modification and the court finds:

a. The persistent and willful denial or interference with visitation;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The primary physical care of the child has changed to the other parent for longer than six months.

Under N.D.C.C. § 14–09–06.6(4), a trial court must set a date for an evidentiary hearing on a motion for change of custody if a prima facie case justifying modification is established. *Quarne*, at ¶ 11.

[¶ 10] The evidence submitted to the trial court, including Bladow's evidence in support of the ex parte order, indicated problems implementing visitation exchanges. In support of her motion, Berg filed an affidavit that alleged "repeated problems and difficulty in agreeing to a proper exchange schedule." She stated custodial exchange incidents were repeated and common. She specifically claimed instances in which she had been denied visitation with her oldest child and had been subjected to repeated incidents of physical assault and violence during exchanges. She submitted police reports regarding exchange problems. We conclude the trial court had sufficient evidence to implicitly find a persistent and willful denial or interference with visitation when the court scheduled the September 4, 2003, hearing. This case involves more than the lack of detailed allegations involved in *Hawley*, 2004 ND 215, ¶ 10, 689 N.W.2d 386. Although frustration of visitation, by itself, may not always be enough to ultimately modify custody, we conclude the evidence provided to the trial court in this case was sufficient to establish a prima facie case justifying modification and to warrant an evidentiary hearing. We reject Bladow's claims that the trial court procedurally erred in determining custody.

B

[¶ 11] Bladow argues the trial court clearly erred in awarding split custody of the children. He claims although the court arguably found a "persistent and willful denial or interference with visitation" under N.D.C.C. § 14–09–06.6(5), the court did not exhaust all remedies regarding visitation and should have resorted to a more rigid visitation schedule.

[¶ 12] A trial court's decision to modify custody is a finding of fact subject to the clearly erroneous standard of review. *Hilgers v. Hilgers*, 2002 ND 173, ¶ 22, 653 N.W.2d 79. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 13] In this case, the trial court was not required to ignore the practical consequences of the effect of the parties' initial "equal" custody agreement on the children's school situation and the logistics of the parties' residences. The court recognized the impact of the children's school

situation and the parties' residences on the equal custody arrangement and said it was not possible to implement the equal custody agreement. The court also relied on the parties' practices regarding the primary physical custody of the children since entry of the divorce judgment. The court found the two younger children had spent significant time with Berg and the older child had spent significant time with Bladow. There was evidence about a summer visitation schedule which supports the court's finding to effectively maintain the status quo regarding primary residential care. The court's finding about primary residential care for the children is not clearly erroneous. Although split custody of siblings is not preferred, see *Loll v. Loll,* 1997 ND 51, ¶ 14, 561 N.W.2d 625, under these circumstances, we are not left with a definite and firm conviction the trial court made a mistake in splitting custody of these children and setting a visitation schedule. We, therefore, conclude the court did not clearly err in splitting custody and in implementing the visitation schedule. We affirm the trial court's custody decision.

### C

[¶ 14] Bladow argues the trial court abused its discretion in awarding Berg $7,000 in attorney fees. He argues there is no evidence he was in contempt of court and there was evidence Berg's actions constituted contempt. He also argues there is no basis for the court's determination that he protracted the litigation, and neither party has the ability to pay the other party's attorney fees.

[¶ 15] A trial court has considerable discretion in awarding attorney fees, and its decision will not be overturned on appeal unless the court abused its discretion. *Giese v. Giese,* 2002 ND 194, ¶ 11, 653 N.W.2d 663. In a divorce case, a trial court may award either party attorney fees under N.D.C.C. § 14–05–23, and the guiding principle for an award of attorney fees is one party's need and the other party's ability to pay. *Giese,* at ¶ 11. A trial court may also consider whether one party's actions have unreasonably increased the time and efforts spent on the dispute. *Id.*

[¶ 16] In awarding Berg attorney fees, the trial court said:

In September, 2003, this Court issued a verbal exchange schedule with respect to the minor children. [Bladow] failed to exchange the children pursuant to said schedule, and his actions demonstrating this are discussed more fully in the Memorandum Opinion. The Court further finds that [Bladow's] actions necessitated that [Berg] incur additional fees in enforcing her rights under the Court's interim order.

. . . .

The Court further finds that [Bladow] has operated a farming operation at a loss, but that he is employed by Wilkin County and earns wages of approximately $37,000.00 per year. When this Court compares the actual wages of [Bladow] with that of the income of [Berg] it appears that the ratio is at least two to one, if not more. The Court further finds that [Bladow] has been the cause of much of the protracted nature of this litigation. [Berg] is in need of attorneys fees to defend against the actions of [Bladow]. [Berg] presented evidence of her attorneys fees, and the Court finds that they are reasonable, and that she is herein awarded $7,000.00 in attorneys fees.

[¶ 17] There is evidence supporting the trial court's finding that Bladow's actions required Berg to incur additional fees to enforce her rights under the court's order. There is also evidence Bladow was the

cause of much of the protracted nature of this litigation, which entailed five days of evidentiary hearings. Although Bladow may have losses from his self-employment as a farmer, he has an annual income of about $37,000 from his other employment with Wilkin County. The disparity in income and resources supports an award of attorney fees to Berg. The trial court's award of attorney fees may have been justified for any one of those reasons, and when all of those circumstances are considered together, we conclude the trial court did not abuse its discretion in awarding Berg $7,000 in attorney fees.

### III

[¶ 18] In her cross appeal, Berg argues the trial court erred in setting Bladow's child support obligation by allowing him to deduct claimed losses from his self-employment as a farmer to reduce his income from a non-farming job with Wilkin County. In determining the parties' child support obligation, the trial court found Bladow had operated a farming operation at a loss, but he was employed by Wilkin County at an annual salary of about $37,000. The court stated it would not deduct Bladow's farm losses from his wages to the point where he would have no child support obligation, but the court imputed the minimum wage to both parties for child support purposes, which resulted in Bladow paying $32 per month for child support. Berg argues she demonstrated Bladow incurred losses from farming in more than forty percent of the years averaged, and Bladow's farm losses could not be used to reduce his income from Wilkin County for child support purposes under N.D. Admin. Code § 75–02–04.1–05(7).

[¶ 19] Child support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to a clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to an abuse-of-discretion standard of review. *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215. As a matter of law, a trial court must clearly set forth how it arrived at the amount of income and level of support. *Id.* at ¶ 12. A proper finding of net income is required to determine the correct amount of child support under the guidelines. *Id.* A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines. *Id.*

[¶ 20] The child support guidelines authorize determinations of child support obligations for split custody and equal custody. *See* N.D. Admin. Code §§ 75–02–04.1–03 and 75–02–04.1–08.2. A determination of net income from self-employment generally requires use of the average of the most recent five years of self-employment. N.D. Admin. Code § 75–02–04.1–05(4). Section 75–02–04.1–05(7), N.D. Admin. Code, authorizes the use of a self-employment loss resulting from averaging to reduce income that is not related to self-employment only if the loss was calculated for no more than forty percent of the years averaged:

7. When three or more years were averaged under subsection 4, a loss resulting from the averaging may be used to reduce income that is not related to self-employment only if the loss is not related to a hobby activity, losses were calculated for no more than forty percent of the years averaged, and monthly gross income, reduced by one-twelfth of the average annual self-employment loss, equals or exceeds the greatest of:

a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage;

b. An amount equal to six-tenths of prevailing gross earnings of persons with similar work history and occupational qualifications who work in any place within one hundred miles [160.93 kilometers] of the obligor's actual place of residence; or

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, calculated without using self-employment losses, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court.

[¶ 21] Bladow testified his losses from farming for the last five years averaged $33,538 per year. There was also evidence Bladow had a negative income from farming for each year from 1998 through 2002. The evidence establishes Bladow incurred losses from self-employment in more than forty percent of the years averaged. We conclude Bladow's farming losses should not have been used to reduce his other income from Wilkin County, and the court erred as a matter of law in failing to comply with the guideline requirement that the "losses were calculated for no more than forty percent of the years averaged." We conclude a remand is necessary to properly calculate Bladow's child support obligation.

IV

[¶ 22] We affirm the trial court's custody decision and award of attorney fees, and we reverse the court's determination of Bladow's child support obligation and remand for further proceedings.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 24] The Honorable DANIEL J. CROTHERS did not participate in this decision.