2014 ND 56

**Simone REGAN, Plaintiff and Appellee**

v.

**John LERVOLD, Defendant and Appellant.**

**No. 20130200.**

Supreme Court of North Dakota.

April 3, 2014.

Robert G. Ackre, Cando, N.D., for plaintiff and appellee; submitted on brief.

Timothy P. Hill, Fargo, N.D., for defendant and appellant; submitted on brief.

SANDSTROM, Justice.

[¶ 1] John Lervold appeals from a district court order denying his motion to modify primary residential responsibility from Simone Regan to himself. We conclude the district court erred as a matter of law in ruling that a material change in circumstances did not exist and in denying Lervold's request for a change of primary residential responsibility. We reverse and remand for further proceedings.

I

[¶ 2] Simone Regan and John Lervold were married in 2003 in Maryland and subsequently lived in Georgia and California. They have one son, who was nine years of age at the time of the May 2013 hearing in this case. The parties divorced in California after a "lengthy litigious process," and they agreed to shared parenting time for their minor son, culminating in a May 13, 2010, stipulation and order for custody and visitation, which was entered in the Superior Court of California for the County of Sacramento. By the time the order was entered, Lervold was living in Arizona, and Regan was residing in Rolla, North Dakota. Both parties have remarried.

[¶ 3] Under the May 2010 California court order, Lervold was entitled to parenting time during the school year and primary physical custody in the summer. Each party was entitled to reasonable telephone communication with the minor child and were mandated to purchase a webcam for alternative communication. The parties were awarded joint legal custody, and, as the parent with primary residential responsibility during the school year, Regan was responsible for providing Lervold with school records, meeting notices, and school conference information. The order also required Regan to complete an assessment and medical evaluation by a board-certified psychiatrist within 90 days of the May 2010 order.

[¶ 4] In April 2011, the venue of this case was changed from Sacramento County, California, to Rolette County. In June 2012, in the district court Lervold moved to modify primary residential responsibility. The district court appointed a custody investigator in August 2012, who subsequently completed a report and recommendation in December 2012. The custody investigator's report, in part, concluded the co-parenting arrangement agreed upon by the parties was not working well and the child had suffered from the conflict between the parties.

[¶ 5] In May 2013, Lervold moved the district court for leave to permit telephonic testimony at the evidentiary hearing on his motion. The court denied his request in a May 2013 order and again denied his oral request at the hearing to present witness testimony by telephone. The district court held an evidentiary hearing on May 29 and 30, 2013, and subsequently issued its memorandum opinion and order, denying Lervold's motion to modify primary residential responsibility.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] Lervold argues that the district court erred in refusing to consider all evidence, including telephonic testimony. Regarding the form and admissibility of evidence in civil proceedings, N.D.R.Civ.P. 43(a) states:

At trial, the witnesses' testimony must be taken in open court unless a statute, the Rules of Evidence, these rules, or other court rules provide otherwise. *For good cause, or on agreement of the parties, and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.* A party must give notice if a witness is unable to testify orally or if testimony by contemporaneous transmission may be necessary.

(Emphasis added.)

[¶ 8] We have explained that the district court has broad discretion in deciding evidentiary matters. *Lawrence v. Delkamp,* 2008 ND 111, ¶ 7, 750 N.W.2d 452. "This Court will overturn the district court's admission or exclusion of evidence only if the district court has abused its discretion." *Id.* A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not based on a rational mental process. *Id.*

[¶ 9] Here the district court denied a request before trial and at trial to permit testimony to be provided telephonically. Lervold apparently sought admission of telephonic testimony from Regan's brothers, who reside in California and Arizona. Although Lervold points out that counsel had previously appeared telephonically for legal argument, the district court declined telephonic testimony, in part, because of a lack of technology in the courtroom. We have said mere convenience of witnesses may not be sufficient to establish "good cause" under the rule and have acknowledged the shortcomings of telephonic testimony. *See Lawrence,* 2008 ND 111, ¶¶ 9–10, 750 N.W.2d 452 (discussing N.D.R.Civ.P. 43(a) amendment and explanatory note); *see also Gust v. Gust,* 345 N.W.2d 42, 45 (N.D.1984) ("[I]n testimony by telephone the image of the witness cannot be seen nor does it disclose if the witness is using or relying upon any notes or documents and, as a result, meaningful communication is effectively curtailed or prevented.... Above all, in testimony by telephone the trier of facts is put in a difficult, if not impossible, position to take into account the demeanor of the witness in determining the witness' credibility.").

[¶ 10] On the basis of our review, we cannot conclude the district court acted arbitrarily, unconscionably, or unreasonably, or that its decision was not based on a rational mental process. We therefore conclude the court did not abuse its discretion in denying Lervold's request to present telephonic testimony at the evidentiary hearing.

III

[¶ 11] Lervold argues the district court erred by concluding a "material change in circumstances" did not exist in denying his request for a change of primary residential responsibility.

A

[¶ 12] "A parent may move to modify primary residential responsibility under the framework provided in N.D.C.C. § 14–09–06.6." *Hageman v. Hageman,* 2013 ND 29, ¶ 5, 827 N.W.2d 23. Section 14–09–06.6(6), N.D.C.C., requires a two-step process for post-judgment modification of residential responsibility when a motion is filed more than two years after a prior order establishing residential responsibility:

The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:

a. On the basis of facts that have arisen since the prior order or which

were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

[¶ 13] The party moving for modification has the burden of proving a material change in circumstances has occurred. *Seibold v. Leverington*, 2013 ND 173, ¶ 10, 837 N.W.2d 342. A "material change in circumstances" is an important new fact *not known at the time of the prior custody decree*, but not every change will be sufficient to warrant a change of primary residential responsibility. *Id.* "A party's conduct before the prior residential responsibility decision may be relevant if the prior decision was based on the parties' stipulation and the district court was unaware of the facts at the time of the stipulation." *Krueger v. Tran*, 2012 ND 227, ¶ 13, 822 N.W.2d 44.

[¶ 14] "A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *Seibold*, 2013 ND 173, ¶ 10, 837 N.W.2d 342 (quotations omitted). A "material change in circumstances" may also exist "when one parent attempts to alienate a child's affection for the other parent, when parents are openly hostile towards each other and that hostility negatively affects the child, or when the noncustodial parent's situation improves accompanied by a general decline in the child's condition with the other parent over the same time period." *Krueger*, 2012 ND 227, ¶ 14, 822 N.W.2d 44.

[¶ 15] The district court's decision whether to modify residential responsibility is a finding of fact, subject to the clearly erroneous standard of review.

*Krueger*, 2012 ND 227, ¶ 11, 822 N.W.2d 44. A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or this Court is convinced, on the basis of the entire record, that a mistake has been made. *Id.*

### B

[¶ 16] Lervold argues the district court erred in concluding no material change in circumstances had occurred because "numerous events" had transpired since the May 2010 judgment that constitute a material change in circumstances and warrant further evaluation into the best interest factors. Lervold points to four separate child welfare reports to social services made between July 2011 and February 2013. The allegations included the physical grabbing of the minor child by the step-parent in the child's home. Lervold contends that the social worker assigned to investigate the reports acknowledged concerns of inappropriate discipline and asserts that Regan had admitted use of corporal punishment by forcing consumption of tabasco sauce.

[¶ 17] Lervold also says the police had been called to Regan's residence by Regan in January 2013 and the minor child witnessed the event. Lervold argues Regan acknowledged one domestic altercation during which there was yelling and the minor child was in the house. Lervold says that Regan has an "alternative lifestyle" and that the district court appointed a custody investigator because of the increasing level of hostilities and the nature and number of accusations being asserted. Further, Lervold argues that, while the court is not bound to follow the custody investigator's report and recommendations, the court did not adequately consider the report.

[¶ 18]   Regan responds, however, that the district court had conflicting evidence and did not clearly err in concluding there was no material change in circumstances. Regan contends, regarding the four child welfare reports, that one report was initiated by Lervold's wife, one was initiated by Regan's estranged aunt who lives out of state, and the remaining two were initiated by mandatory reporters at the child's school.   Regan contends the social worker who investigated these reports found no evidence of the child having been exposed to drugs, sexual behavior, or inappropriate discipline, and the two most recent reports were administratively dropped because they had repeated previously unfounded allegations.   Regan contends the social worker testified the child lived in a safe and stable environment and, according to both the social worker and the custody investigator, the biggest source of conflict in the child's life had been the protracted custody dispute between the parents.   Regan argues Lervold seeks to relitigate the facts that have already been decided, by arguing this Court should focus only on facts favorable to his position.

[¶ 19]   Here the district court held an evidentiary hearing in May 2013 on the motion to modify primary residential responsibility and found that no previously unknown facts had arisen that would constitute a material or significant change in circumstances of the child or the parties and that the child's present environment did not appear to endanger his physical or emotional health or impair his emotional development.   The court found that the testimony at the evidentiary hearing was "almost exclusively" focused on Regan's alleged character flaws and other shortcomings.   The court found that a prior evaluation in California had included lengthy and detailed discussions of all of the described conduct, which the court had

characterized as "alleged character flaws." Specifically, the court found:

The testimony at the evidentiary hearing was almost exclusively focused upon alleged character flaws and other shortcomings attributed to Simone [Regan]. The primary topics were:

. . . .

Simone's failure or refusal to communicate with John

Simone's lack of cooperation in fulfilling John's parenting time entitlements

. . . .

Prior to the entry of the Stipulation and Order of May 13, 2010, the California court requested and received an evaluation from Janelle Burrill, Ph.D., J.D., L.C.S.W.—(Exhibit 3) a copy of which was attached to the Report and Recommendations of Parenting Investigator prepared by this court's appointed Custody investigator Launee Lawyer Hamnes.   The California Evaluation included lengthy and detailed discussions of *all* of the above described subjects. *Thus none of these areas of concern (whether or not proved) can possibly be deemed to constitute "facts that have arisen since the prior Order which were unknown to the court at the time of the prior Order. . . ." Absent some other discussion point it cannot be said that there has been any material change of circumstances in this matter.*

The Report submitted by Ms. Hamnes does refer to one area that was not previously raised and probably did not exist at the time of the California evaluation.   Specifically, as JJ[, the minor child,] has grown older and the tensions between his parents have persisted (if not escalated), episodes of conflict between JJ and [Regan] and her [current] husband ... have increased.   JJ has occasionally been defiant and [Regan] has responded with mixed success.

The question in this court's mind is whether or not JJ's behavior is an unexpected development or a natural occurrence in the course of events to be anticipated under the circumstances of this and similar cases. The scenario we are dealing with involves a bright nine year old boy who pictures himself as the monkey being pulled between two football players. He is bound to be impacted by the hostilities between his parents and has undoubtedly intuitively learned how to respond to his advantage. Even living in a much less stressful "normal" family atmosphere, it has been this court's experience that children begin testing the parental waters at approximately JJ's age.

(Emphasis added.)

[¶ 20] Thus the district court held that "[a]bsent some other discussion point" it could not find there had been a material change in circumstances since entry of the prior custody order in this matter. We believe, however, the district court erred in applying the law in its analysis of whether the new facts established at the evidentiary hearing could constitute a material change in circumstances. First, the court erred in concluding evidence of Regan's failure or refusal to communicate with Lervold and Regan's lack of cooperation in fulfilling Lervold's parenting time entitlements—whether or not proved—could not "possibly" establish a material change in circumstances. We have said that "[f]rustration of visitation may also warrant an evidentiary hearing and justify modification of custody." *Ehli v. Joyce*, 2010 ND 199, ¶ 8, 789 N.W.2d 560 (citing *Bladow v. Bladow*, 2005 ND 142, ¶ 10, 701 N.W.2d 903). Although the question of whether new facts constitute a material change in circumstances is for the district court to decide, even when a material change of circumstance exists, a change of

primary residential responsibility is not necessarily required. *See Bladow*, at ¶ 10. Here, there is evidence in the record that both parties have violated the judgment regarding the transfer of the child and that Regan has not followed the judgment regarding contact with Lervold and in providing information about the child to Lervold. Under these facts, the district court must decide whether evidence of frustration of parenting time constitutes a change in material circumstances, and we conclude the court erred in concluding evidence of Regan's failure to communicate and lack of cooperation, even if proved, could not constitute such a material change.

[¶ 21] Second, the district court erred in concluding that evidence of the parents' open hostility towards each other that negatively affects their child could not establish a material change in circumstances. *See Dufner v. Trottier*, 2010 ND 31, ¶ 16, 778 N.W.2d 586 ("[A] material change of circumstances can exist when a parent remarries, when there has been an attempt to alienate a child's affection for a parent or when parents are openly hostile towards each other and the hostility negatively affects their children."). Here the court found the North Dakota custody investigator's report had, in fact, referred to an area not previously raised and which "probably" did not exist at the time of the California evaluation. The court acknowledged the child had grown older; the tensions between his parents had persisted and escalated; episodes of conflict between the child, his mother, and his step-father had increased; and the court found the minor child had occasionally been defiant and Regan had responded with mixed success. Yet, the court concluded that the question was actually whether the child's behavior was "an unexpected development or a natural occurrence in the course of events to be anticipated under the circum-

stances of this and similar cases." This, however, is not our standard for deciding whether there has been a "material change in circumstances," *see, e.g., Seibold,* 2013 ND 173, ¶ 10, 837 N.W.2d 342 ("[a] material change in circumstances is an important new fact that was not known at the time of the prior custody decree"), because continued wrongful conduct or hostility that negatively affects a child may constitute a material change in circumstances. *See also Krueger,* 2012 ND 227, ¶ 14, 822 N.W.2d 44. Nonetheless, despite finding the child was "bound to be impacted by the hostilities between his parents" and had "undoubtedly intuitively learned how to respond to his advantage," in addition to providing specific directives in its order because the court was troubled by the parties' conduct, presumably to prevent the parties' hostilities from impacting the child, the court concluded there had been no material change in circumstances.

[¶ 22] In this case, the record contains clear evidence of new facts that were not known at the time of the prior custody decree which support that a material change in circumstances has occurred. There is evidence regarding four child welfare reports and two full assessments completed by Social Services. Although the Social Services may have concluded the child was not abused and services were not required, there is evidence of continuing conflict and hostilities between the parents, and evidence of at least some negative impact on the child. Additionally, the North Dakota custody investigator stated in her report that the parties' agreed-upon co-parenting agreement was not working well and the child had suffered emotionally from the conflict between the parents. The investigator also stated that Regan's approach to discipline was more likely the cause of problems between her and the child and that if the child remained in Regan's primary residential care, prob-

lems were likely to persist and may become unmanageable as the child ages. The investigator testified at the hearing she would support a change in primary residential responsibility to Lervold.

[¶ 23] We therefore conclude the district court's finding that a material change in circumstances did not occur is clearly erroneous, in that the court's decision was induced by an erroneous view of the law, and we are convinced on the basis of the entire record that a mistake has been made. We therefore reverse the district court's order holding that a material change in circumstances had not occurred and remand this case for consideration of the best-interest factors, N.D.C.C. § 14-09-06.2(1), in deciding whether a modification of primary residential responsibility is necessary to serve the best interests of the child under N.D.C.C. § 14-09-06.6.

IV

[¶ 24] The district court order is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

[¶ 25] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 26] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.

CROTHERS, Justice, concurring and dissenting.

[¶ 27] I concur in Part II of the majority opinion holding the district court did not err by denying Lervold's request to present testimony by telephone.

[¶ 28] I respectfully dissent from the remainder of the decision because I disagree the district court made a legal mistake in determining no material change of circumstances occurred. Majority opinion at ¶ 23. I also disagree with the majority's reweighing of evidence to make the factual finding a material change of circumstances is established. *Id.*

[¶ 29] The portion of the statute pertinent to this appeal requires that the movant establish "a material change has occurred in the circumstances of the child or the parties" as proven by "facts that have arisen since the prior order or which were unknown to the court at the time of the prior order." N.D.C.C. § 14–09–06.6(6)(a). The district court's determination of a material change of circumstances is a finding of fact subject to our clearly erroneous standard of review. Majority opinion at ¶ 15.

[¶ 30] Here, the motion sought to modify primary residential responsibility established by a California court order dated May 13, 2010. The North Dakota hearing focused on six "alleged character flaws and other short comings" that Lervold attributed to Regan. The North Dakota court found the California court "requested and received an evaluation from Janelle Burrill, Ph.D., J.D., L.C.S.W." The North Dakota court also found, "The California Evaluation included lengthy and detailed discussions of *all* of the above described subjects. Thus none of these areas of concern (whether or not proved) can possibly be deemed to constitute 'facts that have arisen since the prior Order which were unknown to the court at the time of the prior Order.' "

[¶ 31] The district court did note that tensions remain high between the parties and that the child is affected by those tensions. However, the district court weighed those tensions in the context of all of the evidence, including a lengthy Parenting Investigator's Report and Recommendations. Based on the quantum of evidence, it concluded, "This court does not believe that any previously unknown facts have arisen that would constitute a material (or significant) change in circumstances of the child or the parties."

[¶ 32] The district court weighed the evidence. Our standard of review permits limited interference with that weighing and requires that we defer to the district court's credibility assessments. *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482 ("In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result."). Under the evidence here, the district court properly could have determined that family tensions (although continuing) were not changes since the last order. The district court also properly could have found that the continuing tensions did not rise to a new level so as to be material to the question of changing primary residential responsibility. Either decision is a proper exercise of the district court's fact-finding function because, while it has authority to change the parent with whom the child resides, the court was acutely aware that—no matter where the child lived—his parents and a grandmother had poisonous relationships causing family tensions. In short, the district court recognized the problem was a hostile and dysfunctional family unit regardless which parent had primary residential responsibility. This reality is evident in the district court's order:

- [The child] knows far too much about the hostilities between his parents.
- Neither of the parties—nor anyone associated with either party—shall make

any negative comments about the other nor discuss ongoing litigation with or in the presence of [the child].

- Both of the parties shall demonstrate a more cooperative attitude toward facilitating parenting time and communications.

- [The child's grandmother] shall have no contact with [the child. The grandmother] is obviously a bitter, angry woman who is determined to advocate against her daughter Simone. No good will come of any contacts between [the child] and his potentially poisonous maternal grandmother. John shall not permit or enable any grandparenting time between [the grandmother and the child].

- The parties must declare a truce and put their energies and resources to work for the best interests of [the child].

Because of the facts and the overall record, I would abide by our standard of review and affirm the district court's order denying change of primary residential responsibility.

[¶ 33] MARY MUEHLEN MARING, J.S., concurs.