**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**FEBRUARY 18, 2021**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 23

| | |
|---|---|
| Daniel Joseph Stoddard, Jr., | Plaintiff and Appellant |
| v. | |
| Christina Jean Singer, F/K/A | |
| Christina Jean Stoddard F/K/A | |
| Christina Jean Ringering, | Defendant and Appellee |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

## No. 20200157

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Bonnie P. Humphrey, Minot, ND, for plaintiff and appellant; submitted on brief.

Elizabeth J. Sundby, West Fargo, ND, for defendant and appellee; submitted on brief.

**Crothers, Justice.**

[¶1] Daniel Stoddard appeals from a district court order and judgment amending the parenting plan between Stoddard and Christina Singer for their minor child, M.S.S. Stoddard presents 12 issues, asserting the district court erred in its determination a change in primary residential responsibility was unwarranted. Stoddard's issues can be condensed to the four arguments we address below. We affirm the district court's order and judgment finding Stoddard did not meet his burden of proof regarding primary residential responsibility, not appointing a parenting investigator, and delaying the emergency hearing. We reverse the district court's order preventing Stoddard from proceeding on a psychological parent claim related to J.B.G.

I

[¶2] Stoddard and Singer were married on April 24, 2010, in Washington state. The parties' minor child, M.S.S., was born in January 2010. Singer has a child from a previous relationship, J.B.G., born in 2006. J.B.G. has no biological or legal connection with Stoddard. The parties separated in May, 2016 while living in North Dakota. They resided in the same house until Stoddard returned to Washington in August, 2016. The parties were divorced on March 15, 2017. The divorce was by agreement of the parties, each self-represented. As part of the agreement, Singer received primary residential responsibility for M.S.S. while Stoddard received parenting time on alternating holidays and summer vacations.

[¶3] On May 20, 2018, Stoddard filed an expedited motion to modify and enforce judgment. The parties reached a temporary agreement for Stoddard's summer parenting time. The district court denied any other immediate relief. On June 20, 2018, a schedule and order for mediation was entered. A partial agreement was reached during mediation regarding winter parenting time and some property and debt issues. On December 23, 2018, Stoddard filed an amended motion to amend and enforce judgment. On January 28, 2019, an

order finding prima facie case and granting an evidentiary hearing was entered. The evidentiary hearing was held on July 18, 2019. Stoddard filed his closing argument on August 19, 2019, and Singer filed a letter brief on August 20, 2019.

[¶4] On September 25, 2019, before the district court made a decision on the pending issues, Stoddard filed an emergency motion for an interim order placing M.S.S. in his custody. When Stoddard's telephonic requests to schedule an emergency hearing were denied, he wrote letters to the court to request a hearing. A hearing was scheduled on the emergency motion for January 21, 2020. During the hearing, the court interviewed J.B.G. and M.S.S. On February 24, 2020, the court entered an order denying Stoddard's amended motion to modify and enforce judgment, as well as his emergency motion. The order amending the parenting plan and the amended judgment were filed on May 18, 2020.

II

[¶5] Stoddard argues the district court erred in finding he did not meet his burden of proof in seeking a change of primary residential responsibility for M.S.S. Stoddard asserts the court erred in: (1) failing to find abuse or neglect by Singer, (2) not finding Singer's alleged failures to provide for M.S.S.'s needs was a reason to award him primary residential responsibility, (3) failing to find Singer's alcohol and marijuana use interfered with M.S.S.'s safety, (4) failing to find a change in residential responsibility was necessary to provide for M.S.S.'s special needs, (5) failing to find Singer willfully violated and interfered with parenting time, (6) failing to consider Singer's alleged lack of credibility, and (7) failing to find a material change in circumstances existed that warranted a modification in parenting time.

[¶6] A district court's decision on whether to modify primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Regan v. Lervold*, 2014 ND 56, ¶ 15, 844 N.W.2d 576. A finding of fact is clearly erroneous if it is induced by an erroneous view of the

2

law, there is no evidence to support it, or if the appellate court is convinced, on the entire record, a mistake has been made. *Id.*

[¶7] Unless agreed to in writing or in the parenting plan, a motion for an order to modify primary residential responsibility may not be made earlier than two years after the entry of an order establishing primary residential responsibility. N.D.C.C. § 14-09-06.6(1). That time limitation does not apply if the court finds:

> "a. The persistent and willful denial or interference with parenting time; b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or c. The primary residential responsibility for the child has changed to the other parent for longer than six months."

N.D.C.C. § 14-09-06.6(3)(a)-(c). Under the clearly erroneous standard of review, this Court will not "reweigh the evidence, reassess the credibility of witnesses, or substitute [its] own judgment for a district court's initial decision." *Vandal v. Leno*, 2014 ND 45, ¶ 6, 843 N.W.2d 313.

[¶8] Stoddard argues on several occasions the district court erred by not making certain findings. Although on a different basis, the Minnesota Supreme Court concluded a district court's failure to make certain findings was not clearly erroneous. *In re Disciplinary Action against Albrecht*, 779 N.W.2d 530, 538 (Minn. 2010) (explaining that in deference to a referee's findings and because findings on mitigating factors require an assessment of witness credibility, the referee's decision not to find additional mitigating factors was not clearly erroneous).

A

[¶9] Stoddard argues Singer deprived and neglected M.S.S. to a point below minimum community standards, constituting domestic violence against M.S.S. Domestic violence is defined as "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household

3

members." N.D.C.C. § 14-07.1-01. Stoddard asserts Singer's use of a baby gate at night, M.S.S.'s alleged exposure to unsafe and unsanitary conditions, including feces in a bathroom, and Singer's lack of attention to M.S.S.'s dental and medical needs support this contention. Stoddard asserts he addressed M.S.S.'s continuing medical problems, which should have contributed to a finding M.S.S. was deprived and neglected while in Singer's care.

[¶10] Despite Stoddard's assertion, the court received evidence showing M.S.S. did not have access to the bathroom that was allegedly covered in feces. Additionally, Stoddard filed several reports with social services regarding alleged unsafe conditions and alleged lack of medical care for M.S.S. Each investigation was terminated in progress with no findings or basis for abuse or neglect allegations. Testimony also was presented showing Easter Seals approved of Singer's use of a baby gate at night for M.S.S. Testimony also showed Singer was unable to promptly take care of M.S.S.'s dental problems because she was referred to a different dentist due to M.S.S.'s special needs.

[¶11] The district court was presented with conflicting evidence about Singer's care for M.S.S. This Court will not reweigh the evidence presented. *Vandal*, 2014 ND 45, ¶ 6. The district court's lack of a finding of domestic violence was not clearly erroneous and we are not left with a definite and firm conviction a mistake was made.

B

[¶12] Stoddard argues the district court erred by not finding Singer's alleged failures to provide for M.S.S.'s safety, structure, educational needs, medical and dental problems were reasons to award him primary residential responsibility. Stoddard argues Singer continually failed to provide M.S.S. with a safe environment. He asserts Singer's alcohol and marijuana use were ignored by the court, including that illegal substances should not be used around a special needs child.

[¶13] Stoddard filed several complaints with social services regarding these issues. The complaint investigations all were terminated in progress finding

4

no neglect or abuse. A school paraprofessional testified M.S.S. was well-dressed at school each day, with unmatted hair and clean fingernails. A social worker with whom Singer voluntarily engaged on a monthly basis testified she had no concerns about M.S.S.'s safety with Singer after thoroughly inspecting and touring Singer's home. The district court noted the medical and school records showed that despite M.S.S.'s heightened hygienic and medical needs due to his sensory processing disorder, those needs were met by Singer. Although Singer admitted to going to the bar each Wednesday to visit with a friend, M.S.S. was left in the care of J.B.G., something social services found on more than one occasion was not a problem. Further, despite Singer's admitted marijuana use, she testified she did not use around M.S.S. or J.B.G. No evidence was offered by Stoddard to the contrary. As the court noted, Stoddard presented no evidence of Singer's association with illegal drug dealing and M.S.S.'s possible access to the illegal drugs. The district court not finding Singer failed to provide for M.S.S.'s needs was not clearly erroneous.

C

[¶14] Stoddard asserts the district court erred in failing to find Singer's admitted use of alcohol and illegal drugs interfere with M.S.S.'s safety and well-being. No evidence was presented establishing that Singer used drugs in the presence of M.S.S., that M.S.S. had access to marijuana due to Singer's use, or that drug use adversely affected her care for M.S.S. The court not finding Singer's alcohol and marijuana use interfered with the safety of M.S.S. was not clearly erroneous.

D

[¶15] Stoddard contends awarding primary residential responsibility and decision-making to him is necessary to provide for M.S.S.'s special needs. Stoddard asserts Singer's lack of priority for M.S.S.'s care was proven by her refusal to communicate, to provide parenting time, and to take M.S.S. to the dentist or a medical care provider. Stoddard testified he believed the delay in seeking dental care for M.S.S. was due to Singer prioritizing her own dental

care. Singer testified the reason M.S.S.'s dental care was delayed is because she needed to locate a dentist who would treat a child with M.S.S.'s needs.

[¶16] Stoddard also claimed Singer interfered with his parenting rights by scheduling an appointment with a geneticist in Fargo rather than continuing care with M.S.S.'s geneticist in Washington. Stoddard alleges Singer failed to communicate with him when she did not give him the name of the geneticist in Fargo. The district court found Singer met M.S.S.'s medical needs since his birth, despite disagreements between Stoddard and Singer as to how M.S.S.'s needs should be met. The court made findings based on disputed evidence, which was not error. *Vandal*, 2014 ND 45, ¶ 6. The court's lack of further findings that Singer failed to address M.S.S.'s special needs was not clearly erroneous.

E

[¶17] Stoddard asserts the district court erred when it did not find Singer interfered with his parenting time. Stoddard claims Singer intentionally and willfully interfered with his parenting time by reducing electronic contact with M.S.S. to four days a week instead of seven. He further claims only allowing alternate winter breaks impedes and directly interferes with M.S.S.'s relationship with Stoddard. Stoddard contends the court heard testimony showing each of his parenting time requests were met with interference by Singer.

[¶18] Each parent is allowed reasonable access to their children by written, telephonic, and electronic means. N.D.C.C. § 14-09-32(1)(c). Stoddard and Singer's stipulated parenting plan reflects this provision of law. Stoddard presented no evidence establishing that access to M.S.S. via video communication four days a week rather than seven was an intentional interference with his parenting time. Singer asserts the change was made because daily contact proved to be too much for M.S.S., who is mostly non-verbal. While Stoddard asserts he only was allowed alternate winter breaks for parenting time, the parenting plan provided for M.S.S. to be with Stoddard each summer. Stoddard admits he received that parenting time during the

summers of 2017, 2018 and 2019. While miscommunications occurred about when M.S.S. needed to be back with Singer at the end of summer 2018, Stoddard had M.S.S. until the day before school began. Overall, the district court had disputed evidence before it. Deference is given to the court because making such a finding required an assessment of witness credibility. *See Albrecht*, 779 N.W.2d 530, 538 (Minn. 2010). The court's failure to find willful or intentional interference by Singer with Stoddard's parenting time was not clearly erroneous.

F

[¶19] Stoddard claims the district court erred when it did not consider Singer's alleged lack of credibility and inconsistent testimony in making its determination that a change in primary residential responsibility was unwarranted. He argues the court should have reassessed Singer's credibility after the January 21, 2020 hearing where she allegedly admitted she was not candid under oath about her alcohol and drug use.

[¶20] At the January hearing, Singer was confronted with Facebook posts regarding alcohol use but asserted she quit drinking after a September 2019 hospital admission for mental health problems. Singer also admitted to occasional marijuana use. Stoddard points out no actual instance in which Singer's testimony was inconsistent. This Court has said:

> "'In a bench trial, the [district] court is the "determiner of credibility issues and we do not second-guess the [district] court on its credibility determinations." We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the [district] court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous.'"

*Roberson v. Roberson*, 2004 ND 203, ¶ 10, 688 N.W.2d 380 (quoting *McDowell v. McDowell*, 2003 ND 174, ¶ 16, 670 N.W.2d 876). The district court's determination that Singer's testimony was credible was not clearly erroneous.

7

[¶21] Stoddard argues the district court erred by not finding a material change of circumstances exists meriting a modification of parenting time. Essentially, Stoddard argues that while the two-year period for modification was not met when the initial motion was filed, the period would have been met in March 2019.

[¶22] Under N.D.C.C. § 14-09-06.6, the standard the district court must apply to decide whether to modify parenting time depends on when the motion was made and not when the court ultimately decides the motion. *Morton Cty. Soc. Serv. Bd. v. Cramer*, 2010 ND 58, ¶ 17, 780 N.W.2d 688. According to that section:

> "The court may not modify the primary residential responsibility within the two-year period following the date of entry of an order establishing primary residential responsibility unless the court finds the modification is necessary to serve the best interests of the child *and*:
> a. The persistent and willful denial or interference with parenting time;
> b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or
> c. The residential responsibility for the child has changed to the other parent for longer than six months."

N.D.C.C. § 14-09-06.6(5) (emphasis added). If a modification is sought after the two-year period, a court may modify primary residential responsibility on a showing of a material change in circumstances of the child or party and that a modification is in the best interests of the child. N.D.C.C. § 14-09-06.6(6). Stoddard was not eligible for the less stringent standard under N.D.C.C. § 14-09-06.6(6) because he filed a motion for modification within two years of entry of the original order. Upon application of the less stringent standard, Stoddard asserts the best interest factors weigh in favor of awarding him primary residential responsibility. Stoddard makes a separate argument the district court failed to address concerns about property and debt enforcement, claiming

financial stability is crucial to a best interests determination when raising a special needs child.

[¶23] Under N.D.C.C. § 14-09-06.6(5) the movant bears the burden of showing a change in primary residential responsibility is in the child's best interests *and* the persistent and willful denial of parenting time, the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development, or the primary residential responsibility for the child has changed to the other parent for longer than six months. (Emphasis added.) As noted above, the district court found no persistent and willful denial of parenting time, and no endangerment to M.S.S.'s physical or emotional health or development. The court's findings regarding denial of parenting time and harm to the child were not clearly erroneous and therefore we do not reach Stoddard's argument regarding the best interest factors.

III

[¶24] Stoddard argues the district court erred by not considering his relationship with J.B.G., and by not permitting him to seek parenting time with J.B.G. as a psychological parent.

[¶25] "It is well-settled that parents have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person." *Bredeson v. Mackey*, 2014 ND 25, ¶ 10, 842 N.W.2d 860 (quoting *Hamers v. Guttormson*, 2000 ND 93, ¶ 5, 610 N.W.2d 758). A parent's right to custody, however, "is not absolute and exceptional circumstances may exist that require, for the best interest of the child, that a non-parent receive visitation or custody." *Bredeson,* at ¶ 10. A visitation award to a non-parent may be made when the non-parent is a "psychological parent or when the non-parent has an established relationship with the child." *Id.* at ¶ 11 (internal citation omitted). This Court has defined a psychological parent as "A person who provides a child's daily care and who, thereby, develops a close bond and personal relationship with the child [and] . . . to whom the child turns for love, guidance, and security." *Id.*

9

[¶26] When Stoddard's parenting time with J.B.G. was brought up during the first evidentiary hearing, the following exchange occurred:

> "[MS. HUMPHREY]: Now you also requested visitation with JBG, [how] come?
>
> [STODDARD]: I raised JBG for seven years. I was the only father figure she knew of.
>
> THE COURT: Okay, stop right there. You're wasting my time. Is JBG his child?
>
> MS. HUMPHREY: No.
>
> THE COURT: Does JBG have a father figure somewhere?
>
> MS. HUMPHREY: Him.
>
> THE COURT: No, I meant an actual father. A biological father. Does JBG have a biological father? He has not passed away? Is it him?
>
> THE WITNESS: She has a biological father she has never met, Your Honor.
>
> THE COURT: That's fine. Has his rights been terminated as a father? Whoever that person is whom she has never met?
>
> MS. SUNDBY: No.
>
> THE COURT: Okay. Sorry, you have no claim here. Continue."

Stoddard claimed he spent significant time with J.B.G. before the divorce and acted in a parental role toward her both before and after the divorce. He asserted the district court should have awarded him parenting time with J.B.G. because he is a "psychological parent."

[¶27] Although North Dakota recognizes the psychological parent claim, we have not described the threshold necessary to proceed with a claim. Several of

10

our sister states have done so, explaining that the moving party must present a prima facie case before being allowed to proceed. *See In re Custody of H.S.H.-K.*, 533 N.W.2d 419, 421 (Wis. 1995) (explaining a circuit court may only determine whether visitation is in a child's best interests if the petitioner first proves all required elements of a parent-like relationship); *A.F. v. D.L.P.*, 771 A.2d 692, 698-701 (N.J. Super. Ct. App. Div. 2001) (applying the four prongs of the Wisconsin test).

[¶28] The prima facie case threshold is consistent with North Dakota's requirement for a parent's motion for a change in primary residential responsibility. *See* N.D.C.C. § 14-09-06.6(4) ("The court shall set a date for an evidentiary hearing only if a prima facie case is established."); *Dietz v. Dietz*, 2007 ND 84, ¶ 19, 733 N.W.2d 225 ("If a prima facie case is not established as a preliminary matter under N.D.C.C. § 14-09-06.6(4), a hearing on an interim order pending the proceeding for the motion to change custody is not necessary."). Like a parent seeking to change primary residential responsibility, we conclude a non-parent seeking parenting time in addition to a biological or legal parent-child relationship also should be required to meet the prima facie threshold before being able to proceed with an evidentiary proceeding.

[¶29] Stoddard moved for "visitation" with J.B.G. In addition to trying to present evidence as indicated above, Stoddard testified the parties had "agreements" regarding his involvement in J.B.G.'s life after the divorce. Prior to the hearing, the district court determined Stoddard established a prima facie case regarding decision-making and residential responsibility for M.S.S. The court made no similar finding regarding Stoddard's visitation with J.B.G. Nothing suggests the district court intended to grant an evidentiary hearing on the visitation requested for J.B.G. Based on this record, the district court erred either in not determining whether Stoddard presented a prima facie case regarding J.B.G. or, if intending its order to find a prima facie case for J.B.G, by not allowing Stoddard to proceed with the visitation claim at the evidentiary hearing. We reverse and remand for the district court to determine whether

11

Stoddard established a prima facie case warranting a hearing on his request for time as a psychological parent.

IV

[¶30] Stoddard claims the district court erred by not appointing a parenting investigator. "In contested proceedings dealing with parental rights and responsibilities the court, upon the request of either party, or, upon its own motion, may order an investigation and report concerning parenting rights and responsibilities regarding the child." N.D.C.C. § 14-09-06.3(1). "When a district court *may* do something, it is generally a matter of discretion." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215 (emphasis in original).

[¶31] On December 2, 2018, as part of Stoddard's amended motion, he requested the district court appoint a parenting investigator. The court denied that request in its February 23, 2020 order. Stoddard makes no contention the court's decision not to appoint a parenting investigator was an abuse of discretion. He presented no supporting facts to show the court erred by declining to appoint an investigator. The court's decision not to appoint a parenting investigator was not an abuse of discretion.

V

[¶32] Stoddard argues the district court erred by delaying, without explanation, the hearing under N.D.R.Ct. 8.2 for his emergency motion. Stoddard asserts the court's repeated denials, without explanation, directly affected the well-being, emotional, and physical condition of M.S.S. as shown by testimony at the hearing held on January 21, 2020.

[¶33] "If a notice of motion and motion are served to obtain an interim order, the court shall hold a hearing no later than 30 days from the date of filing the motion." N.D.R.Ct. 8.2. However, this Court has stated: "If a prima facie case is not established as a preliminary matter under N.D.C.C. § 14-09-06.6(4), a hearing on an interim order pending the proceeding for the motion to change custody is not necessary." *Dietz,* 2007 ND 84, ¶ 19.

12

[¶34] Stoddard filed his emergency motion on September 25, 2019. A hearing on the motion was not held until January 21, 2020. The district court did find Stoddard established a prima facie case under his original motion for modification of primary residential responsibility. However, an evidentiary hearing was held on the original motion and the case was being reviewed by the court when Stoddard filed his second motion. There is nothing in the record suggesting the court's reasoning for delaying the hearing. There were several affidavits and letters filed with the court between the second motion and evidentiary hearing that could have led to the eventual establishment of a prima facie case. Stoddard's affidavit initially filed with the motion primarily took issue with Singer's hospitalization for mental health problems and alleged Singer lied under oath about several items related to her mental health. In contrast, Stoddard's supplemental affidavit filed January 4, 2020, alleged Singer denied Stoddard holiday parenting time with M.S.S. and that Singer was binge drinking while M.S.S. was in her care. Under the facts and circumstances of this case, including Stoddard filing a new motion and papers before the district court decided the pending motions, Stoddard has not shown the court erred in delaying an evidentiary hearing.

VI

[¶35] We affirm the district court's order and judgment finding Stoddard did not meet his burden of proof regarding primary residential responsibility, not appointing a parenting investigator, and delaying the emergency hearing. We reverse the district court's order preventing Stoddard from proceeding on a psychological parent claim related to J.B.G. and remand for proceedings consistent with this opinion.

[¶36] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte